# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01913-SCT

*SARAH BULLOCK*

*v.*

*LIFE INSURANCE
COMPANY OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/8/2001 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN W. CHRISTOPHER |
| ATTORNEY FOR APPELLEE: | KENNA L. MANSFIELD, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 05/06/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Life Insurance Company of Mississippi ("Life") filed a complaint for rescission, monetary damages and injunctive relief against Sarah Bullock, claiming that, in connection with a promissory note by Bullock to Trustmark National Bank, Bullock applied for credit life and disability insurance ("CL&D insurance") with an intent to defraud by submitting false disability claims and collecting benefits thereon.  Bullock submitted a claim alleging that she broke her left foot and hurt her right hand.  She submitted claims on November 2, 1998, and December 3, 1998, and January 15, March 2, April 29, July 12, and September 9, 1999.  Life paid benefits in the amount of $3,297.60 to Bullock on the basis of these claims.

¶2.    Life filed the complaint in the Chancery Court of Madison County, Mississippi, alleging that its principal place of business was in Madison County. In a later pleading, it alleged that, under Miss. Code Ann. § 11-5-1 (Rev. 2002), the action was a suit "respecting real or personal property," and that some of the personal property[1] was located in Madison County. In a motion for change of venue, Bullock alleged that she was an adult resident citizen of Simpson County, Mississippi, that the branch bank where she obtained the loan and purchased the CL&D insurance was in Simpson County, and that the cause of action accrued in Simpson County. The chancery court denied the motion for change of venue.

¶3.    In her answer to Life's complaint, Bullock filed a counterclaim against Life, alleging breach of contract for refusal to pay benefits and negligent and/or intentional infliction of emotional distress.

¶4.    Meanwhile, Life filed a motion for summary judgment and attached exhibits which showed that, during the time that Bullock was submitting claims to Life, she was also submitted claims to two other CL&D insurers. Bullock's stated diagnoses in the Life claim forms was different from the stated diagnoses in the claim forms for the other insurers. Life contended that Bullock included material misrepresentations in her application for CL&D insurance. Furthermore, Life was entitled to have the policy rescinded retroactive to the date of issue; therefore there was no breach of contract. Life reasoned that, if no breach of contract existed, no claim for emotional distress existed.

¶5.    After thoroughly discussing all of the documentary evidence presented by Life, the chancellor granted summary judgment to Life, finding that Bullock had failed to "rebut [the motion] by producing significant probative evidence showing that there were indeed genuine issues for trial." The chancellor also denied Bullock's motion for summary judgment. From this judgment, Bullock appeals.

---

[1]Miss. Code Ann. § 1-3-41 (Rev. 1998) defines "personal property" as "all written instruments by which any pecuniary obligation, or any right, title, or interest in any real or personal estate, shall be created, acknowledged, transferred, incurred, defeated, discharged, or diminished."

**DISCUSSION**

**I.     WHETHER THE CHANCELLOR ERRED IN GRANTING LIFE'S MOTION FOR SUMMARY JUDGMENT.**

¶6.     Bullock contends that summary judgment was improper because (1) triable issues of fact existed; and (2) the chancellor improperly made credibility determinations in granting summary judgment. We employ a de novo standard of review of a trial court's grant or denial of a summary judgment and examine all the evidentiary matters before it -- admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law, summary judgment should forthwith be entered for the movant. Otherwise, the motion should be denied. *Hurdle v. Holloway*, 848 So. 2d 183, 185 (Miss. 2003) (citing *Heigle v. Heigle*, 771 So. 2d 341, 345 (Miss. 2000)).

*Triable Issues of Fact*

¶7.     The documentary evidence in the record shows as follows:

(1)     In her application for Life's CL&D insurance dated June 25, 1998, Bullock stated that she was not currently disabled and was actively engaged in full-time employment.     (2)     After applying for the CL&D insurance, Bullock submitted a claim for disability benefits, alleging that she had fallen, breaking her left foot and spraining her right hand. She ceased working on July 24, 1998.

(3)     Bullock submitted additional claims on November 2, 1998, and December 3, 1998, and January 15, March 2, April 29, July 12, and September 9, 1999. All of these claims stated that she was disabled from and after July 24, 1998, due to the fall.

(4)     The claim forms submitted on July 12 and September 16, 1999, showed that she was disabled due to depression and anxiety.

(5)     Bullock submitted a claim form to Life Investors Insurance Company on July 6, 1998, in which she stated that she was disabled due to chest pain and shortness of breath, that her first symptom occurred on May 7, 1998, and that she was not working as of June 21, 1998.  She submitted subsequent claims to Life Investors on August 14, September 8, November 2 and November 3, 1998.

(6)     Bullock submitted a claim form to Cherokee National Life on August 17, 1998, in which she stated that she was disabled due to shortness of breath, that her first symptom occurred on May 7, 1998, and that she was totally disabled as of June 21, 1998.

(7)     Bullock's physician, Charles Pruitt, M. D., III, stated that Bullock visited him for chest pain and shortness of breath on May 7, 1998, and that Bullock became disabled due to these conditions as of June 21, 1998, and/or June 22, 1998.

¶8.     When questioned about the accuracy of these representations at her deposition, Bullock averred that they were true.

¶9.     We find that the documentary evidence, when coupled with Bullock's averments at her deposition, overwhelmingly proves that Bullock made material misrepresentations to Life and that Life is entitled to rescission of the contract.  The documents she filed with the three insurance companies completely contradict themselves.  There are three dates on which she claims to have become totally disabled.  The cause for her total disability (shortness of breath or chest pain or broken foot and sprained hand or anxiety and depression) differs among the applications.

4

¶10. To rescind an application for insurance, an insurer must show that the application contains answers which are false, incomplete, or misleading and that such answers are material to the acceptance of the risk or to the hazard to be assumed. *Prudential Ins. Co. of Am. v. Estate of Russell*, 274 So. 2d 113, 116 (Miss. 1973). The application Bullock submitted to Life is, at the least, incomplete because she failed to mention her "disability" due to shortness of breath and/or chest pain. She also stated that she was working full time as of the date of the application, July 24, 1998, but on the other applications, she stated that she no longer worked as of June 21, 1998 and/or June 22, 1998, both dates being prior to July 24, 1998.

*Credibility Determinations*

¶11. Bullock contends that the chancellor improperly made credibility determinations in ruling on the motion for summary judgment. This claim is frivolous. The statements so obviously contradict each other, that one can only conclude that false statements were made.

**II.      WHETHER THE CHANCELLOR ERRED IN DENYING BULLOCK'S MOTION FOR CHANGE OF VENUE.**

¶12. Because summary judgment was appropriately granted to Life, this issue is moot.

**CONCLUSION**

¶13. We affirm the Chancery Court of Madison County's judgment in favor of Life Insurance Company of Mississippi.

¶14. **AFFIRMED.**

**SMITH, C.J., COBB, P.J., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, GRAVES AND RANDOLPH, JJ., NOT PARTICIPATING.**