# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01924-SCT

*MILDRED ELAINE THOMPSON RAYNER,*
*INDIVIDUALLY AND MICHELLE LYNN*
*RAYNER BYNUM, AS NATURAL MOTHER AND*
*NEXT FRIEND OF BILLY JOE DAVID BYNUM, A*
*MINOR*

*v.*

*SHERIFF RONNIE PENNINGTON, FOR THE*
*COUNTY OF RANKIN, MISSISSIPPI, MICHAEL*
*B. McCARTY, AND JOHN DOES 1-6*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/14/2008 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GARY LEE WILLIAMS |
| | J. EDWARD RAINER |
| ATTORNEYS FOR APPELLEES: | MICHAEL JEFFREY WOLF |
| | C. ALLEN McDANIEL, III |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 01/07/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., RANDOLPH AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     Mildred Elaine Thompson Rayner and Michelle Lynn Rayner Bynum, as natural

mother and next friend of Billy Joe David Bynum, a minor (collectively, "Rayner") filed suit

against Rankin County Sheriff Ronnie Pennington, Deputy Michael B. McCarty, and John

Does 1-6 (Rankin County) pursuant to the Mississippi Tort Claims Act (MTCA) for injuries

stemming from a vehicular accident. *See* Miss. Code Ann. § 11-46-1 to 11-46-23 (Rev. 2002). The Circuit Court of Rankin County granted summary judgment to Rankin County; Rayner appeals. This Court affirms the grant of summary judgment to Rankin County.

## FACTS

¶2. Rayner filed the complaint on March 21, 2007. She alleged that, on the afternoon of March 22, 2006, Deputy McCarty was in the course and scope of his employment with the Rankin County Sheriff's Department when he drove through a red light at the intersection of Highway 468 and Highway 18 in Brandon, Mississippi, and collided with Rayner's oncoming vehicle. Rayner alleged that Deputy McCarty, traveling south on Highway 468, approached the intersection at an unsafe high speed and failed to yield to oncoming cross-traffic, which constituted gross negligence and reckless disregard for the rights and safety of others using the intersection. Rayner demanded compensatory damages, punitive damages, costs, attorneys' fees, and prejudgment and postjudgment interest.

¶3. Rankin County answered, asserting that it enjoyed immunity under the Mississippi Tort Claims Act. Rankin County subsequently filed a motion for summary judgment, asserting that there was no genuine issue of material fact concerning its entitlement to qualified immunity under Mississippi Code Section 11-46-9(1)(c). That section provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
>> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-

2

being of any person not engaged in criminal activity at the time of the injury;

Miss. Code Ann. § 11-46-9(1) (Rev. 2002).

¶4. In support of the motion, Rankin County attached the accident report and excerpts of the deposition testimony of Deputy McCarty and of Rayner, and of eyewitnesses Janet Cook and Marsha Williams. Deputy McCarty testified that he was headed home from the Sheriff's Department when he heard a call over the dispatch for a disturbance at Cedar Ridge Trailer Park, located off Highway 468. The dispatcher did not communicate the nature of the disturbance. Deputy McCarty told the dispatcher he would be en route with another officer. He immediately turned on his blue lights and sirens, and headed south on Highway 468 at about fifty to fifty-five miles per hour toward the intersection of Highway 468 and Highway 18. At the intersection, he slowed and crossed into the oncoming (northbound) lane of Highway 468, coming to a complete stop at the red light. A vehicle in the eastbound center turn lane of Highway 18 obstructed his view of the eastbound lane of Highway 18. Deputy McCarty said he cautiously entered the intersection. He related that he "slowly creeped forward and stopped, creeped forward and stopped, and creeped forward and stopped," keeping a lookout the entire time. Deputy McCarty testified that his blue lights and sirens were on when he entered the intersection, and that he crept forward at five miles per hour. Nonetheless, Rayner's minivan, traveling in the eastbound lane of Highway 18, abruptly collided with the side of his patrol car. Deputy McCarty said that he never saw the minivan, because his view was obstructed by the vehicle in the center turn lane of Highway 18. Deputy McCarty suffered only a minor cut in the crash.

3

¶5.    Cook testified that she was traveling south on Highway 468 when she heard a siren and observed a patrol car approaching behind her with its blue lights on. She stopped at the Highway 18 intersection, and the patrol car passed her car, entered the oncoming (northbound) lane, and stopped at the intersection. Cook observed the patrol car cautiously enter the intersection, with blue lights flashing, and get hit by a minivan. Cook observed Deputy McCarty looking left and right several times before the collision. Cook testified that it appeared that the minivan had not slowed down upon approaching the intersection.

¶6.    Williams testified that she was a passenger in her mother-in-law's car traveling eastbound on Highway 18.[1] They planned to turn south onto Highway 468, but they observed a patrol car at the intersection with its sirens on and blue lights flashing. They pulled into the right-turn lane and waited for the patrol car to proceed through the intersection. Williams observed that the patrol car was stopped at the intersection, and then it proceeded slowly through the intersection and stopped in the middle. At that point, the patrol car was struck by a minivan traveling eastbound, from the same direction Williams had been traveling when she had observed the patrol car and her mother-in-law had pulled over. It appeared to Williams that the minivan was traveling at the speed limit when it struck the patrol car.[2]

¶7.    In a response to the summary judgment motion, Rayner attached her complete deposition; the deposition of Billy Joe Bynum, the father of Rayner's grandson, Billy Joe

---

[1] In her testimony, Williams confused the directional points of the intersection. For clarity, the Court has corrected the narration of Williams's testimony to conform to the actual directional points.

[2] There is no evidence that Rayner exceeded the posted speed limit.

Bynum, Jr.; Deputy McCarty's deposition; and a copy of certain law enforcement policies and procedures. Bynum, Jr., aged three, was traveling in the passenger seat of Rayner's minivan during the accident. Rayner testified that as she approached the intersection, she removed her foot from the gas pedal to slow down. She observed some vehicles in the southbound lane of Highway 468, but it was clear ahead of her. She watched the green light as she approached the intersection. Then she saw a white flash, and her minivan struck the patrol car. She testified that she never heard any sirens or saw any blue lights. Rayner testified that she suffered permanent injuries in the accident. Bynum testified that Bynum, Jr., received a bump on the head and a seat-belt bruise, from which he fully recovered.

¶8. On July 15, 2008, the trial court granted Rankin County's motion for summary judgment, finding that there were no genuine issues of material fact as to how the accident occurred, and that the evidence showed Deputy McCarty had not acted with reckless disregard. Thus, the trial court found that Rankin County was entitled to immunity under Mississippi Code Section 11-46-9(1)(c).

¶9. Rayner filed a motion for reconsideration and an amended motion for reconsideration. The trial court denied the amended motion for reconsideration. Rayner has timely appealed, arguing that summary judgment was improper.

## STANDARD OF REVIEW

¶10. "This Court reviews errors of law, which include the proper application of the Mississippi Tort Claims Act, de novo." *Fairley v. George County*, 800 So. 2d 1159, 1162 (Miss. 2001). We examine all the evidentiary matters before the trial court, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. *Bullock v.*

5

*Life Ins. Co. of Miss.*, 872 So. 2d 658, 660 (Miss. 2004). We view all the evidence in the light most favorable to the nonmoving party. *Id.*

## LAW AND ANALYSIS

### I. WHETHER RANKIN COUNTY WAS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AND IT WAS ENTITLED TO IMMUNITY UNDER THE MTCA.

¶11. Rayner argues that genuine issues of material fact were present that Deputy McCarty acted in reckless disregard of the safety and wellbeing of her and her passenger. Due to the inherent danger and risk of liability faced by police officers and firefighters, public policy requires that these actors incur no liability for mere negligence, but only for reckless acts. *Maldonado v. Kelly*, 768 So. 2d 906, 909 (Miss. 2000). Accordingly, this Court has held that "reckless disregard" under Section 11-46-9(1)(c) "embraces willful and wanton conduct which requires knowingly or intentionally doing a thing or wrongful act." *Turner v. City of Ruleville*, 735 So. 2d 226, 230 (Miss. 1999). Wantonness is a failure to exercise any care. *Maldonado*, 768 So. 2d at 910. When analyzing the conduct of police officers under the MTCA, reckless disregard is a higher standard than gross negligence. *Turner*, 735 So. 2d at 230. This Court has defined "reckless disregard" as:

> the voluntary doing by motorist of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining from doing a proper or prudent act when such act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the reckless taking of chance of accident happening without intent that any occur
> . . . .

*Id.* at 229. "Reckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Miss. Dep't of*

6

*Pub. Safety v. Durn*, 861 So. 2d 990, 995 (Miss. 2003) (quoting *Maye v. Pearl River County*, 758 So. 2d 391, 394 (Miss. 1999)). Police officers are not liable for negligence, which is a failure to exercise due care. *Maldonado*, 768 So. 2d at 910.

¶12.    Rayner argues there was no genuine issue of material fact that Deputy McCarty acted with reckless disregard, because he entered the intersection from an improper lane, against the red light, and with an obstructed view of the eastbound lane of Highway 18. Rayner contends that Deputy McCarty should have known there was a strong probability that an intersection protected by a red light would have a high degree of oncoming traffic. Rayner also argues that Deputy McCarty's decision to cross an intersection against the red light in response to a mere disturbance call contravened Mississippi statutory law and the policies and procedures of the Rankin County Sheriff's Department.

¶13.    This Court has found on several occasions that a governmental entity waived its immunity under the MTCA by engaging in acts evincing reckless disregard for the safety and wellbeing of persons not engaged in criminal activity. In *Turner*, the Court found that the plaintiff had stated a claim that an officer had acted with reckless disregard. *Turner*, 735 So. 2d at 230. The plaintiff had alleged that he was struck by a drunk driver after an officer with the City of Ruleville Police Department pulled the drunk driver over for erratic driving, but willfully and wantonly allowed him to continue driving despite his obvious incapacity. *Id.* at 227. In *City of Jackson v. Lipsey*, 834 So. 2d 687, 693 (Miss. 2003), this Court affirmed a finding of reckless disregard when an officer, responding to a burglary call, turned suddenly into oncoming traffic without headlights, sirens, or blue lights. In *City of Jackson v. Perry*, 764 So. 2d 373, 380 (Miss. 2000), the Court held that an officer, who was not

7

responding to an emergency call, acted with reckless disregard by speeding without blue lights or sirens activated.

¶14.     Rayner cites *Maye* for the proposition that Deputy McCarty acted in reckless disregard by proceeding into the intersection despite an obstructed view. In *Maye*, a deputy sheriff was backing out of a driveway at the county jail when he backed into another vehicle that was pulling into the driveway. *Maye*, 758 So. 2d at 392. The deputy testified that, although he had checked his mirrors, he could not see the road from the parking lot because the jail was at a lower elevation than the road. *Id.* When the other motorist saw the deputy backing toward her car, the deputy was forty feet away. *Id.* at 394. The motorist braked and honked the horn, but the deputy continued backing and collided with her car. *Id.* at 392. The deputy admitted he had not seen her car. *Id.* at 394. The motorist's car sustained a level of damage indicating the deputy had backed at a high rate of speed. *Id.* at 395. This Court held that the deputy had acted with conscious indifference by backing out of the driveway at a high rate of speed when he could not see what was behind him. *Id.* The Court concluded that, in doing so, the deputy had acted with reckless disregard for the safety of others. *Id.*

¶15.     Rayner also cites *Davis v. Latch*, 873 So. 2d 1059, 1061 (Miss. Ct. App. 2004), in which an officer approached an intersection in response to a disturbance and struck a car that made a sudden turn into the intersection. As the officer approached with lights and sirens, the officer observed the car stopped at the intersection. *Id.* Although the car did not display a turn signal, it turned suddenly and collided with the officer's vehicle. *Id.* The Court of Appeals determined that the officer had not acted in reckless disregard because: (1) he had approached the intersection with his blue lights, wigwags, and sirens activated, (2) nothing

8

had obstructed the officer's view, (3) the car had no turn signal activated, and (4) the officer had stopped at two previous intersections because they were blind intersections, which showed his appreciation for the risk involved in crossing an intersection in an emergency. *Id.* at 1063. Rayner argues that, unlike in *Davis*, the fact that Deputy McCarty's view was obstructed proves that he acted with reckless disregard in crossing the intersection.

¶16. In response to this contention, Rankin County cites *Maldonado*, in which this Court held that a deputy sheriff did not act in reckless disregard in crossing an intersection with a partially obstructed view. *Maldonado*, 768 So. 2d at 911. The deputy sheriff was driving his patrol car to a service shop for maintenance. *Id.* at 908. He approached an intersection protected by a two-way stop sign and known to be a dangerous intersection. *Id.* The deputy sheriff came to a complete stop, looked both ways, proceeded, and was struck by an oncoming vehicle. *Id.* The deputy sheriff testified that his view of the oncoming traffic was partially blocked by a water tower. *Id.* The Court held that, unlike in *Maye*, *Turner*, and *Perry*, the deputy sheriff had not deliberately disregarded the risk inherent in crossing the intersection. *Id.* at 911. Rather, the deputy sheriff "was aware of the nature of the intersection and took steps to avoid the collision" by stopping and looking both ways before proceeding. *Id.* The court held that, although the deputy sheriff may have been negligent in proceeding despite his partially obstructed view, that act was negligent at most. *Id.*

¶17. Certain statutes apply when an emergency vehicle attempts to cross an intersection past a red light. A statute provides that:

> The driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety but may proceed cautiously past such red

9

or stop sign or signal. At other times drivers of authorized emergency vehicles shall stop in obedience to a stop sign or signal.

Miss. Code Ann. § 63-3-315 (Rev. 2004). A complementary statute provides that: "[u]pon the immediate approach of an authorized emergency vehicle, when the driver is giving audible signal by siren, exhaust whistle, or bell, the driver of every other vehicle shall yield the right-of-way . . . and shall stop and remain in such position until the authorized emergency vehicle has passed . . . ." Miss. Code Ann. § 63-3-809(1) (Rev. 2004).

¶18. We turn to the evidence in this case. Rayner asserts that her own testimony created a disputed issue of material fact regarding whether Deputy McCarty had his lights and sirens on. In *Lipsey*, there was conflicting testimony on this point from the officer, who testified that he had his vehicle's lights and sirens on when entering a road, and from the injured motorist, who testified that the officer's vehicle had displayed no lights or sirens. *Lipsey*, 834 So. 2d at 690. Here, testimony on this question from Deputy McCarty and eyewitnesses Cook and Williams stated that Deputy McCarty had his lights and sirens on. In fact, Williams was traveling from the same direction as Rayner, and she heard the sirens and yielded to Deputy McCarty's patrol car. Rayner testified that she heard no sirens and did not see any blue lights; however, Rayner testified that she had not detected the presence of the patrol car at all before the collision. Indeed, Rayner testified that, as she entered the intersection, she was looking up at the green light. Because she never detected the patrol car, Rayner could not have known whether or not it had lights and sirens on. Thus, there was no conflicting evidence as to whether or not the deputy had initiated lights and sirens as in *Lipsey*. Viewing the evidence in the light most favorable to Rayner, there is no genuine issue

10

of material fact as to whether Deputy McCarty's lights and sirens were on, as every witness who observed his patrol car perceived the lights and sirens.

¶19. Further, it was undisputed that, although Deputy McCarty's view was obstructed due to the vehicle stopped in the center turn lane, he appreciated the danger from oncoming traffic and proceeded cautiously by keeping a lookout and slowly creeping into the intersection. Pursuant to Mississippi Code Section 63-3-809(1), all drivers given an audible signal by an emergency vehicle shall yield the right-of-way. Miss. Code Ann. § 63-3-809(1) (Rev. 2004). In light of this statute, which requires other drivers to yield to an emergency vehicle, Deputy McCarty's precautionary measures of looking both ways and cautiously creeping into the intersection evinces that Deputy McCarty appreciated the risk involved in crossing the intersection. He proceeded cautiously, on the alert for oncoming traffic, but he also relied upon his lights and sirens to alert oncoming traffic of his control of the intersection. Indeed, these safety measures effectively alerted Williams and her mother-in-law, who reached the intersection just ahead of Rayner, noticed the lights and sirens, and appropriately yielded right-of-way to the patrol car. Reckless disregard is the "entire abandonment of any care," while negligence is the failure to exercise due care. *Maldonado*, 768 So. 2d at 910; *Turner*, 735 So. 2d at 229. Deputy McCarty's safety measures aptly demonstrate that he exercised care in crossing the intersection. His cautiously proceeding across the intersection despite an obstructed view was, at most, a failure to exercise due care. Therefore, Deputy McCarty's conduct did not rise to the level of reckless disregard.

¶20. Rayner next argues that Deputy McCarty acted in reckless disregard because his actions violated Mississippi Code Section 63-3-315 and the policies and procedures of the

11

Rankin County Sheriff's Department. Mississippi Code Section 63-3-315 permits the driver of an authorized emergency vehicle to cross an intersection against a red light when responding to an emergency call. Miss. Code Ann. § 63-3-315 (Rev. 2004). Rayner contends that, although Deputy McCarty was driving an authorized emergency vehicle, he lacked authorization to cross the intersection under Mississippi Code Section 63-3-315 because he was responding to a "disturbance," not an "emergency call." She also cites a portion of the policies and procedures of the Rankin County Sheriff's Department, which provides:

> Patrol Activities:
>
> Response to some calls may require several deputies to effectively and safely control the situation. These situations may include but are not limited to:
>
> 1. An assault on an officer;
>
> 2. On-scene arrest for a violent offender;
>
> 3. A potential or actual resistance to arrest;
>
> 4. Use of force incident;
>
> 5. A violent or potential violent crime in progress;
>
> 6. A fleeing suspect; or
>
> 7. Domestic Abuse Incidents.
>
> 8. Motor vehicle accidents.
>
> The first responder must exercise discretion in determining the best course of action. These options range from *immediate intervention* to *identification and reporting*. The safety of deputies and innocent life will always be a prime factor when considering options.

Rankin County Law Enforcement Policies and Procedures, § 3.1 *Patrol Functions & Tactics*. Rayner argues that Deputy McCarty acted in violation of these policies, because he was not a first responder, and he was not responding to one of the eight listed situations. Rayner argues that Deputy McCarty's violation of Mississippi Code Section 63-3-315 and departmental policies was inherently reckless.

¶21. Rankin County contends these arguments are procedurally barred because Rayner failed to raise them before the trial court. However, in her response to the motion for summary judgment, Rayner clearly raised these arguments and attached supporting documentation. Therefore, these arguments are not procedurally barred.

¶22. Rayner argues that if an emergency vehicle drives past a red light in response to a report of a "disturbance," instead of a report specifying an "emergency call," Mississippi Code Section 63-3-315 is violated. Rayner argues that not every situation deemed a "disturbance" would permit emergency driving measures under Mississippi Code Section 63-3-315, because a "disturbance" could constitute something as innocuous as a dog barking. There is no caselaw construing the term "emergency call" as used in Section 63-3-315. Nor is there any evidence disclosing what the disturbance might have been in this case. The term "disturbance" certainly could include an innocuous situation such as a dog barking. But on the other hand, a "disturbance" could just as easily signify domestic violence or another dangerous situation requiring a swift response. Rayner bears the burden to prove that Deputy McCarty acted in reckless disregard. Rayner has not submitted any proof that the situation to which Deputy McCarty was responding was of such an insignificant nature that he acted in reckless disregard by crossing the intersection against the red light.

13

¶23. Rayner cites no authority for her contention that Deputy McCarty's violation of law enforcement policies was equivalent to acting in reckless disregard. It appears that Rayner is arguing that the existence of a police policy that prohibits the course of action taken by the officer constitutes proof that the officer acted with reckless disregard. In *City of Ellisville v. Richardson*, 913 So. 2d 973, 977-78 (Miss. 2003), this Court articulated a ten-part test for reckless disregard that includes, as a factor, the existence of a police policy that prohibits pursuit under the circumstances. However, the ten-part test is used for evaluating whether an officer acted in reckless disregard in connection with a police pursuit. *City of Jackson v. Spann*, 4 So. 3d 1029, 1033 n.7 (Miss. 2009). This case does not involve a police pursuit. Moreover, the evidence lends no support to Rayner's contention that Deputy McCarty violated the Rankin County Sheriff's Department's law enforcement policies. Deputy McCarty testified that he and another officer were responding to the disturbance call. Rankin County's policy states that responding to some calls may require several deputies, and that the situations requiring a response from multiple deputies are not limited to the eight listed situations. The Court finds this argument to be without merit.

## CONCLUSION

¶24. The Court finds no genuine issue of material fact and affirms the judgment of the Rankin County Circuit Court that Rankin County was entitled to judgment as a matter of law. The evidence of how the collision occurred was not in genuine dispute. Deputy McCarty stopped at the intersection and, with his blue lights and sirens activated, slowly proceeded across in a stop-and-start fashion. His safety measures were sufficient to prompt other drivers near the intersection to yield the right-of-way, including the driver traveling in the

14

lane ahead of Rayner. Viewing the evidence in the light most favorable to Rayner, nothing about Deputy McCarty's conduct demonstrated a conscious indifference to consequences equating to almost a willingness that harm should result. Deputy McCarty's safety measures showed that he exercised care in crossing the intersection, and his conduct did not rise to the level of reckless disregard for the safety and well-being of persons not engaged in criminal activity under Mississippi Code Section 11-46-9(1)(c). We affirm the judgment of the Circuit Court of Rankin County granting summary judgment to Rankin County.

¶25.    **AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**