67 So.3d 788 (2010)
H.K. HERNDON, Jr. and Myrna J. Herndon, Appellants
v.
MISSISSIPPI FORESTRY COMMISSION and Jimmy D. Bond, Appellees.
No. 2009-CA-00700-COA.
Court of Appeals of Mississippi.
December 7, 2010.
Rehearing Denied May 10, 2011.
Certiorari Denied August 11, 2011.
*790 Lampton O. Williams Jr., Joseph H. Montgomery, Poplarville, Cory Morris Williams, attorneys for appellants.
Stephen Giles Peresich, Biloxi, Johanna Malbrough McMullan, Jackson, Harry Johnson Schmidt III, Pascagoula, attorneys for appellees.
Before MYERS, P.J., GRIFFIS and BARNES, JJ.
BARNES, J., for the Court:
¶ 1. On October 20, 2005, H.K. Herndon Jr. was driving through a dense, early-morning fog on Highway 53 in Poplarville, Mississippi. At the same time, Jimmy D. Bond, an employee of the Mississippi Forestry Commission (MFC), was operating an MFC transport truck and, not seeing Herndon's vehicle, pulled onto Highway 53 from the driveway of the MFC's field office. Unable to avoid the MFC truck, Herndon crashed his vehicle into the rear tires of the transport truck. Herndon, along with his wife, Myrna J. Herndon, filed a complaint alleging that the MFC and Bond were liable for his resulting injuries. The Circuit Court of Pearl River County granted a motion for summary judgment filed by the MFC, holding that the MFC and Bond, as its employee, were immune from liability under the Mississippi Tort Claims Act (MTCA)[1] and the Mississippi Emergency Management Law (MEML).[2] The circuit court also found that Bond's actions did not constitute reckless disregard. The Herndons have appealed the circuit court's order. Finding that there was no genuine issue of material fact that the MFC and Bond were immune from liability, or that Bond acted with reckless disregard, we affirm the circuit court's judgment.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On October 19, 2005, Bond was ordered by his MFC supervisor, Vincent Smith, to drive an MFC transport truck to pick up a bulldozer from the repair shop the following morning. The bulldozer was needed for fire-protection services as Pearl River County was under a state of emergency as a result of Hurricane Katrina, which had struck the Mississippi Gulf Coast on August 29, 2005. Hurricane Katrina caused widespread destruction, including an extremely high amount of downed timber and storm debris. This *791 situation, coupled with severe drought conditions in October 2005, created a significant wildfire hazard in south Mississippi. On September 12, 2005, the MFC issued a news release stating that twenty counties in south Mississippi, including Pearl River County, were under "official bans on open outdoor burning."
¶ 3. The next morning, at approximately 7:00 a.m., Bond arrived at the MFC field office in Poplarville. Bond drove the transport truck to the field office entrance, preparing to enter onto Highway 53. There was a heavy fog present. At the same time, Herndon was traveling at approximately 40 miles per hour in a southerly direction on Highway 53.
¶ 4. Bond looked up and down the highway for oncoming traffic, and seeing none, he began turning onto the road. Herndon came upon the MFC truck, and he swerved, hitting the rear tires of the MFC truck. Bond got out of the transport truck to check on Herndon and, according to Herndon, stated: "I'm sorry, I didn't see you and it's my fault." However, Bond testified that he merely asked Herndon, "Are you all right?" As a result of the accident, Herndon sustained injuries resulting in approximately $83,500 in medical expenses.
¶ 5. The Herndons filed a notice of claim pursuant to Mississippi Code Annotated section 11-46-11 (Rev.2002) and subsequently filed a complaint for negligence and loss of consortium on March 15, 2007. The MFC filed a motion for summary judgment claiming immunity from liability under Mississippi Code Annotated section 11-46-9(1)(c) (Rev.2002) of the MTCA and Mississippi Code Annotated section 33-15-21(a) (Rev.2005) of the MEML. On March 9, 2009, the circuit judge denied the Herndons' motion to compel the production of Bond's personnel file. Then, on April 6, 2009, the circuit judge issued an opinion and judgment, which stated that the MFC was entitled to immunity from liability under both the MTCA and the MEML. The circuit court also stated that Bond's actions did not constitute "reckless disregard" or "willful misconduct." The Herndons now appeal the court's judgment. Finding no error, we affirm.

STANDARD OF REVIEW
¶ 6. Under Mississippi Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A circuit court's grant or denial of a motion for summary judgment is reviewed under a de novo standard. Price v. Clark, 21 So.3d 509, 517 (¶ 10) (Miss.2009) (citing Arceo v. Tolliver, 949 So.2d 691, 694 (¶ 6) (Miss.2006)).

I. Whether the circuit court erred in finding that the MFC and Bond were immune from liability under the MTCA and MEML.

A. MTCA
¶ 7. Under Mississippi Code Annotated section 11-46-9(1)(c), governmental entities and their employees "engaged in the performance or execution of duties or activities relating to police or fire protection" are immune from liability from certain torts if they are "acting within the course and scope of their employment[.]" (Emphasis added). The only exception is if the employee "acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury."
¶ 8. The Herndons argue that the MFC is not an agency contemplated under this portion of the MTCA statute; therefore, *792 the MFC and Bond, as its employee, are not immune from liability. In Maldonado v. Kelly, 768 So.2d 906, 909 (¶ 6) (Miss. 2000), the Mississippi Supreme Court stated that:
The purpose of Miss[issippi] Code Ann[otated section] 11-46-9 is to "protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim." Police officers and fire fighters are more likely to be exposed to dangerous situations and to liability, and therefore, public policy requires that they not be liable for mere negligence. Entities engaged in police and fire protection activities will be liable for reckless acts only.
(Internal citations omitted) (emphasis added). The MFC claims that Bond's actions on the day of the accident constituted "fire protection." The circuit court agreed with the MFC, finding that the MFC, "by its very nature, is engaged in the act of fire protection services." The MFC also contends that the Herndons admitted in their "Counter-Statement As to Facts that are in Dispute with Defendants" that the MFC is an agency within the scope of the MTCA.
¶ 9. Mississippi Code Annotated section 49-19-3(b) (Supp.2009) states that one of the duties bestowed upon the MFC is the following:
To take such action and provide and maintain such organized means as may seem necessary and expedient to prevent, control and extinguish forest fires, including the enforcement of any and all laws pertaining to the protection of forests and woodland.
(Emphasis added). Mississippi Code Annotated section 49-19-117(3) (Rev.2003) states that the MFC is authorized to use tax funds "in order to foster, encourage, promote and bring about ... organized forest fire control throughout the State of Mississippi ... [and] to purchase fire support equipment, including transport trucks, tractors and other related fire support equipment." Furthermore, Bond's job description states that he is to "participate[ ] in fire suppression work." Photographs contained in the record also show that the transport truck driven by Bond had the word "FIRE" clearly marked on both sides of the cab of the truck.
¶ 10. The Mississippi Supreme Court has held that "if a statute is plain and unambiguous[,]" there is no need for statutory interpretation. Miss. Methodist Hosp. and Rehabilitation Ctr., Inc. v. Miss. Div. of Medicaid, 21 So.3d 600, 607 (¶ 18) (Miss.2009) (citing In re Guardianship of Duckett, 991 So.2d 1165, 1181 (¶ 37) (Miss.2008)). It went on to say that:
However, statutory interpretation is appropriate if a statute is ambiguous or is silent on a specific issue. The best evidence of legislative intent is the text of the statute; the Court may also look to the statute's historical background, purpose, and objectives. If a statute is ambiguous, it is the Court's duty to "carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case."
Id. at 607-08 (internal citations omitted). While the Herndons are correct that our courts have not applied this statute to the MFC, on its face, the statute does not limit such immunity to police officers and fire departments. It merely states that the duties or activities must relate "to police or fire protection." Bond was not merely a truck driver; he was a forest ranger with fire-suppression duties clearly outlined in his job description. In his affidavit, Bond stated: "As a fire crew member, I was responsible for operating trucks and bulldozers, maintaining fire lanes, assisting *793 with back burning to prevent fires, and performing general fire-fighting duties. In particular, on October 20, 2005, I was operating the 1991 International Flatbed truck in route to pick-up the bulldozer needed for fire prevention, fire suppression and general fire-fighting duties on that day." As the MFC participates in fire-fighting activities, it is prone to emergency situations such as those faced by the police or traditional firefighters. In fact, the record reflects that numerous wild fires were occurring all over south Mississippi during that time period, including three in Pearl River County on the day prior to the accident. Thus, we find nothing that would preclude the application of this statute to the MFC.
¶ 11. The Herndons also contend that Bond's task was merely to pick up a bulldozer, which is a maintenance job and not contemplated under the statute; therefore, he was not immune from liability as the statute contemplates emergency services provided by policemen and firemen. However, immunity under the MTCA may still apply in cases where the employee is engaged in ordinary duties related to police and fire protection. In Maldonado, a deputy sheriff was driving to get his patrol car serviced and was involved in a vehicular accident at an intersection where his vision was partially blocked. Maldonado, 768 So.2d at 908 (¶¶ 2, 3). The Mississippi Supreme Court held that the deputy was immune from liability. Id. at 911 (¶ 13). Also, in Reynolds v. County of Wilkinson, State of Miss., 936 So.2d 395, 396-97 (¶¶ 2, 7) (Miss.Ct.App.2006), this Court held that a deputy sheriff, who was involved in an accident while going through an intersection "en route to a hardware store to have spare keys made for county gas pumps[,]" was engaged in a governmental function and subject to immunity under the MTCA. See also McGrath v. City of Gautier, 794 So.2d 983, 987 (¶ 16) (Miss.2001) ("the maintenance of a police department is a governmental function, for which municipalities are exempt.")
¶ 12. Here, the bulldozer that was to be picked up by Bond was used to create fire lanes and clear storm debris. It was being used for a task related to the fire-protection services of the MFC. Therefore, Bond's task of picking up the bulldozer was within the scope of the statute. Accordingly, we find no error in the circuit court's finding that the MFC and Bond were immune from liability under the MTCA.

B. MEML
¶ 13. The circuit court also found that the MFC had immunity under the MEML. Under Mississippi Code Annotated section 33-15-21(a), state agencies and their employees participating in emergency-management services are immune from liability unless the employee is participating in "willful misconduct."
¶ 14. On November 16, 1990, Governor Ray Mabus entered an executive order naming the agencies under the Mississippi Emergency Management Act, specifically listing the MFC as a participating agency. Then, on August 26, 2005, Governor Haley Barbour issued a proclamation declaring a state of emergency due to Hurricane Katrina and requiring "all agencies of the State of Mississippi [to] discharge their emergency responsibilities as deemed necessary[.]" During the months of September and October 2005, there were numerous press releases issued by the MFC discussing the imminent threat of wildfires in southern Mississippi due to drought conditions and noting that burn bans were imposed in over twenty counties, including Pearl River County.
¶ 15. The Herndons claim that section 49-19-3 of the Mississippi Code Annotated, *794 which confers the MFC's statutory powers, does not grant it "emergency management powers" and that Bond was not engaged in any emergency effort. Rather, they contend he was merely running an errand. However, the errand involved picking up a bulldozer needed for disaster relief; thus, we find that the errand would be considered under the MEML. The MFC cites Young v. Mississippi State Port Authority, 2007 WL 141906 (S.D.Miss.2007), for the proposition that "Mississippi agencies are specifically granted [section] 33-15-21 immunity." Furthermore, Mississippi Code Annotated section 33-15-5(c) states that: "`Emergency management' means the preparation for, the mitigation of, the response to, and the recovery from emergencies and disasters." (Emphasis added).
¶ 16. A press release dated September 2, 2005, stated the MFC had "activated its Incident Management Team," which was to "coordinat[e] response and recovery missions for the agency's needs in addition to tasks we receive from the Mississippi Emergency Management Agency." In the five days preceding the accident, there were fifteen wildfire occurrences in Pearl River County. Bond's immediate supervisor, Smith stated in his affidavit that:
It was crucial to have the bulldozer back into service as soon as possible because of the outbreak of fires occurring at that time in the Pearl River County Area, and because of the need to open fire lanes and remove and properly dispose of storm debris which was a fire hazard.
Although the Herndons claim that Mark Hamilton, an MFC supervisor, said that it was not an emergency situation to get the bulldozer, his affidavit states that: "Because of the prevalence of wildfires during the month of October 2005, there was an emergency need to get this bulldozer out of the shop and back into operation." He further testified that the MFC was engaged in "emergency management activities," which included "assisting with the reopening of roads, assisting with debris removal, and fighting and preventing wildfires that threatened people's lives, homes[,] and property." Moreover, Smith testified that he was not notified the bulldozer had been repaired until October 19, 2005. He stated:
At the time I received notification on October 19, 2005, it was in the afternoon and both crews were already in the field. The afternoon time is when wildfires are more prevalent. For these reasons, I instructed Jimmy Bond to pick up the bulldozer first thing in the morning of October 20, 2005.
On October 21, 2005, the MFC issued a news release alerting the public that weather conditions were "contributing to critical fire conditions" and asking them to take "extra precautions." The press release also noted that Mississippi had experienced more than 350 wildfires in October, which had "burned more than 2,600 acres and threatened dozens of homes."
¶ 17. Based upon the evidence in the record, we find there was no genuine issue of material fact as to whether the MFC and Bond were immune from liability under the MEML; therefore, we affirm on this issue.

II. Whether the circuit court erred in denying the Herndons' motion to compel production of Bond's personnel file.
¶ 18. On February 12, 2009, the Herndons filed a motion to compel production of Bond's personnel file. This was denied by the circuit court on March 17, 2009, as the "documents contained therein do not lend themselves to show any type of reckless disregard or willful misconduct of Bond." A circuit court's "denial of a motion *795 to compel is subject to an abuse of discretion standard of review on appeal." Edmonds v. Williamson, 13 So.3d 1283, 1292 (¶ 28) (Miss.2009) (quoting Elec. Data Sys. Corp. v. Miss. Div. of Medicaid, 853 So.2d 1192, 1209 (¶ 57) (Miss.2003)). The Herndons claim on appeal that the personnel file "contains the only source of information related to [Bond's] qualifications as a truck driver." Thus, they argue that the information could show reckless disregard on the part of the MFC by allowing Bond to operate the transport truck.
¶ 19. The MFC contends that the Herndons failed to specifically state in their "Notice of Appeal" that they were appealing this particular ruling made by the circuit court on March 17, 2009. Rather, the notice of appeal concerned the court order dated April 6, 2009, which does not address the denial of the motion to compel. The MFC is correct that the Herndons' notice of appeal filed on April 28, 2009, states that the appeal is "from the Order dated and entered in this case on April 6, 2009." Rule 3(c) of the Mississippi Rules of Appellate Procedure states in part: "The notice of appeal shall specify the party or parties taking the appeal and the party or parties against whom the appeal is taken, and shall designate as a whole or in part the judgment or order appealed from." (Emphasis added). However, the Mississippi Supreme Court recently held in Fletcher v. Lyles, 999 So.2d 1271, 1277 (¶ 25) (Miss.2009), that if the statement of issues and the appellant's brief clearly show the basis for the appeal, then the issue can be addressed on the merits. "Under Rule 3(c) of the Mississippi Rules of Appellate Procedure, `an appeal shall not be dismissed for informality of form or title of the notice of appeal.'" Id. (quoting M.R.A.P. 3(c)). Consequently, we will consider the merits of this issue on appeal.
¶ 20. The MFC also argues that Bond's personnel file is exempt from the Mississippi Public Records Act. See Miss.Code Ann. § 25-1-100 (Rev.2006).[3] However, we need not address this argument as this statute was not the basis for the circuit court's denial of the motion to compel; rather, the circuit judge, in camera, merely reviewed Bond's personnel file and found nothing of relevance pertaining to the issue of whether Bond acted with reckless disregard. After reviewing Bond's personnel file, this Court must agree with the circuit court's finding. There is nothing contained in the file that is relevant to the issue of whether Bond acted with reckless disregard. We find no abuse in discretion in the court's denial of the motion to compel the file and affirm on this issue.

III. Whether the circuit court erred in finding that Bond did not act with reckless disregard.
¶ 21. The Herndons assert that, if it is found that the MTCA or MEML is applicable to the MFC, Bond's actions and the actions of his supervisor, Smith, constituted "reckless disregard" or "willful misconduct." Therefore, immunity would not apply. The circuit court, "viewing the facts in the light most favorable to the non-moving party," found that, while it may have been negligent for Bond to enter the highway in the heavy fog, his actions did not rise to the level of "reckless disregard" or "willful misconduct."
*796 ¶ 22. "Reckless disregard is the `entire abandonment of any care,' while negligence is the failure to exercise due care." Rayner v. Pennington, 25 So.3d 305, 311 (¶ 19) (Miss.2010) (citing Maldonado, 768 So.2d at 909-10 (¶ 8)). It is "willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." Giles ex rel. Giles v. Brown, 31 So.3d 1232, 1237 (¶ 12) (Miss.Ct. App.2009) (quoting City of Jackson v. Lipsey, 834 So.2d 687, 692 (¶ 16) (Miss.2003)). "`[It] is more than mere negligence, but less than an intentional act' and `usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.'" Id. (quoting Miss. Dep't of Safety v. Durn, 861 So.2d 990, 994-95 (¶ 10) (Miss.2003)). "Willful misconduct" means "misconduct committed voluntarily and intentionally." Black's Law Dictionary 1089 (9th ed. 2009).
¶ 23. The Herndons claim on appeal that Smith's ordering of Bond to pick up the bulldozer was reckless as he knew that Bond did not have proper training to drive the transport vehicle; namely, that Bond did not have a commercial driver's license. The Herndons also argue that Smith knew about the fog situation and should have radioed Bond not to proceed. As the claim against Smith was not raised in the proceedings below, the circuit court did not address this issue. Therefore, it is barred from our consideration on appeal. See Brown v. Thompson, 927 So.2d 733, 738 (¶ 16) (Miss.2006) (Under Mississippi law, an issue not raised in the proceedings below is procedurally barred from consideration on appeal.). Moreover, we find nothing in the record to support the Herndons' claim.
¶ 24. The Herndons cite Maye v. Pearl River County, 758 So.2d 391 (Miss.1999), to support their argument that Bond acted with reckless disregard. In Maye, a deputy sheriff was backing out of the county jail's driveway at a high rate of speed when he hit another vehicle that was pulling into the driveway. Id. at 391 (¶ 2). The deputy did not even look for another car before backing up an incline, and he admitted that he could not see the road from the parking lot. Further, the deputy admitted that he did not see the other vehicle. The Herndons claim that Maye is directly analogous to the present case as they allege Bond could not see to exit safely the field office driveway. The Herndons also claim that Bond's alleged statement immediately after the accident, "I'm sorry, I didn't see you and it's my fault[,]" was evidence that Bond acted with reckless disregard.
¶ 25. The MFC responds citing Maldonado, where the Mississippi Supreme Court held that a deputy sheriff, driving his patrol car to get serviced, did not show "reckless disregard" in crossing an intersection with a partially obstructed view. The deputy in Maldonado looked both ways before proceeding cautiously through the intersection, as he was aware that it was a dangerous intersection, and his patrol vehicle collided with Tommy Kelly's automobile. Maldonado, 768 So.2d at 908 (¶¶ 2-3). See also Rayner, 25 So.3d at 311 (¶ 19) (the supreme court finding no reckless disregard as the deputy "appreciated the danger from oncoming traffic and proceeded cautiously by keeping a lookout and slowly creeping into the intersection")
¶ 26. We find this case more analogous to Maldonado. In his affidavit, Bond stated that he "looked both ways and not seeing any vehicles or vehicle headlights, [he] pulled onto Highway 53." Although it was daylight, Bond admitted that he had difficulty seeing when he entered the highway, due to the fog, and that he could not see very far. However, Bond testified that *797 this was why he "looked several times" before entering the highway. Hamilton corroborated this, testifying that Bond told him he had "looked several times in both directions." Further, Herndon, who apparently was able to see well enough to drive down the highway, testified that it was "not a blinding fog" and that he "could see for a distance of at least 4-6 car lengths." Although it was disputed whether Bond had the lights on the transport truck illuminated, the record shows that the MFC's flatbed transport truck had reflectors on the bed. Bond, like the officer in Maldonado, appreciated the impaired visibility, and he attempted to make sure the road was clear before proceeding onto the highway.
¶ 27. At oral argument before this Court, counsel for the Herndons contended that recent cases by the Mississippi Supreme Court support the proposition that "reckless disregard" is, essentially, an "absence of due care." After reviewing the cases referred to by counsel, we must reject this interpretation. As already noted, the supreme court in Rayner found that "the failure to exercise due care" is merely negligence. Rayner, 25 So.3d at 311 (¶ 19). Further, in City of Jackson v. Presley, 40 So.3d 520, 523 (¶ 12) (Miss. 2010), the supreme court reasoned that:
By requiring a finding of "reckless disregard of the safety and well-being of others," the Legislature set an extremely high bar for plaintiffs seeking to recover against a city for a police officer's conduct while engaged in the performance of his or her duties. The City is immune from liability for acts of negligence, and even gross negligence is not enough.
(Emphasis added). In that case, a police officer's vehicle struck Lynda Presley's truck while traveling through a busy intersection. Responding to an emergency call, the officer entered the intersection against the traffic light, with blue lights, siren, and buzzer activated, at approximately five miles an hour. Id. at 521 (¶ 4). A truck blocked the officer's vision, and she did not see Presley. Id. Also relying on Maye, Presley claimed that the officer's actions constituted "reckless disregard." Although the supreme court acknowledged in Presley that the "dangerousness of the intersection" was relevant, it held that "this fact alone is not enough to elevate Officer [Miranda] Morton's conduct to reckless disregard." Id. at 524 (¶ 15). Rather, the officer's actionsusing her sirens and lights and crossing one lane at a timewere found to be immune from liability as "her actions [did] not `evince an abandonment of all care,' or show a `conscious indifference to consequences, amount almost to a willingness that harm should follow[.]'" Id. at (¶ 17) (emphasis added). See also City of Jackson v. Harris, 44 So.3d 927 (¶ 25) (Miss.2010) ("[In] the context of the [MTCA] statute, reckless must connote `wanton or willful,' because immunity lies for negligence.") (quoting Turner v. City of Ruleville, 735 So.2d 226, 230 (Miss.1999)). In City of Laurel v. Williams, 21 So.3d 1170, 1174-75 (¶ 17) (Miss.2009), the supreme court reiterated the definition of "reckless disregard," stating that it is:
a higher standard than gross negligence, and it embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.... Reckless disregard occurs when the "conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved."
(Internal citations omitted). Thus, a finding of "reckless disregard" requires more than the failure to show due care.
*798 ¶ 28. Accordingly, we must agree with the circuit court's determination that no genuine issue of material fact existed that Bond's actions demonstrated "reckless disregard" or "willful misconduct." We affirm on this issue.[4]

IV. Whether the circuit court erred in requiring the MFC to produce internal work product and privileged information.
¶ 29. Without filing a cross-appeal, the MFC brings up this issue in its brief. During discovery, the MFC produced the official accident report prepared by the Mississippi Highway Patrol. However, the Herndons filed a motion requesting the MFC's internal accident-investigative report, the accident-system computer data entry form, and the State of Mississippi's liability claim reporting form, which the circuit court granted. The MFC argues that as the information was prepared in anticipation of litigation and was, therefore, work product, the circuit court erred. It further argues that since the Herndons were able to fully depose the key witnesses, they had no "substantial need" for the internal documents. The Herndons do not address this issue in their reply brief.
¶ 30. First, we note that it was not necessary for the MFC to file a cross-appeal as they were not aggrieved by the judgment. They were merely addressing another issue that would assist their motion for summary judgment. See Dunn v. Dunn, 853 So.2d 1150, 1152 (¶ 8) (Miss. 2003). Second, as we are affirming the circuit court's grant of summary judgment in favor of the MFC and Bond, we decline to address the merits of this issue as it is moot.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., MYERS, P.J., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE OPINION JOINED BY LEE, P.J.
CARLTON, J., dissenting:
¶ 32. I respectfully dissent from the opinion of the majority affirming the trial court's finding of immunity liability under both the Mississippi Tort Claims Act (MTCA) and the Mississippi Emergency Management Law (MEML). I respectfully submit that no immunity exists since Jimmy Bond's actions failed to constitute fire protection services, and his duties at the time of the accident also failed to constitute police law enforcement duties.
¶ 33. At the time of the accident, Bond was operating a flat-bed truck in route to pick up a bulldozer for later use by the Forestry Commission for fire protection services. Bond was not responding in route to any existing emergency or fire protection call, but instead was performing a maintenance duty. Therefore, no immunity exists under MTCA or MEML. See City of Jackson v. Harris, 44 So.3d 927, 933 (¶ 24) (Miss.2010) (Finding city liable where officer committed "traffic offenses" including speeding in route to the hospital on errand related to insurance information, and officer was not responding to an existing emergency.); L.T. ex rel. Hollins v. *799 City of Jackson, 145 F.Supp.2d 750, 757 (S.D.Miss.2000) (finding officer who committed sexual assault was outside of the course and scope of his employment as an officer.). See also Miss.Code Ann. §§ 11-46-5(2) (Rev.2002); 11-46-7(2) (Rev.2002) (specifically excluding traffic offenses from immunity); 63-3-201 (Rev.2004) (breach of traffic offenses constitute misdemeanors); 63-3-503 (Rev.2004) (requiring drivers to abide by speed limit).
LEE, P.J., JOINS THIS OPINION.
NOTES
[1] Miss.Code Ann. § 11-46-1 to -23 (Rev. 2002) (Supp.2009).
[2] Miss.Code Ann. § 33-15-1 to -317 (Rev. 2005).
[3] Mississippi Code Annotated section 25-1-100(1) states that: "Personnel records and applications for employment in the possession of a public body, as defined by paragraph (a) of § 25-61-3, except those which may be released to the person who made the application or with the prior written consent of the person who made the application, shall be exempt from the provisions of the Mississippi Public Records Act of 1983."
[4] The MFC also claims that the expert testimony presented by the Herndons as to whether Bond acted with "reckless disregard" was not admissible. However, there is no reference to this testimony in the circuit court's order or findings. Further, considering the circuit court found no genuine issue that Bond's actions constituted "reckless disregard," we find it unnecessary to address this argument.