# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00639-COA

**PATRICIA PHILLIPS, INDIVIDUALLY AND AS**
**THE NATURAL MOTHER AND NEXT FRIEND**
**OF ADDISON PHILLIPS, A MINOR**

**APPELLANT**

**v.**

**CITY OF OXFORD, MISSISSIPPI**

**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/30/2021 |
| TRIAL JUDGE: | HON. GRADY FRANKLIN TOLLISON III |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BRADFORD KEITH MORRIS |
| ATTORNEYS FOR APPELLEE: | WILTON V. BYARS III |
| | JOSEPH MILES FORKS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 09/20/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. Patricia Phillips, on behalf of herself and her minor child, filed a civil action against the City of Oxford, Mississippi (Oxford), after Oxford Police Officer Matthew Brown struck Phillips' vehicle while he was en route to an emergency. The Lafayette County Circuit Court found that Officer Brown did not act with reckless disregard in response to the emergency and determined that Oxford was entitled to "police-protection immunity" under the Mississippi Tort Claims Act (MTCA). Phillips appealed, asserting that (1) the trial court

erred by finding that Officer Brown did not act in reckless disregard for the safety of others;[1] and (2) asking this Court to determine whether a violation of a statute that governs emergency responders' driving should constitute reckless disregard as a matter of law. Because Oxford is not entitled to the "police-protection immunity," we reverse and remand for a determination of damages.

**FACTS**

¶2. At approximately 4:09 p.m. on a sunny weekday in September 2018, Oxford Police Department (OPD) Officer Brown heard a general callout from OPD's dispatch requesting assistance with a single-vehicle-rollover wreck with unknown injuries. The parties later stipulated that at the time of the callout, Officer Brown was acting within the course and scope of his employment as an officer for the City of Oxford.

¶3. The accident itself occurred in a commercial area at an intersection of two busy two-lane roads (plus turning lanes) that was controlled by a red light. But Officer Brown's route to the emergency included the heavily residential two-lane roads of College Hill Road, McElroy Drive, and Molly Barr Road in Oxford. The area through which Officer Brown drove contained a park, several apartment buildings, a post office, and multiple adjoining neighborhoods. The speed limit on these roads varied from 30 to 45 miles per hour. All the roads were edged with a bicycle lane, which was occupied by pedestrians and a biker at three points during Officer Brown's three-minute response.

¶4. Dash camera footage recorded Officer Brown's entire response, which lasted

---

[1] Phillips lists additional issues in her brief, but we have condensed them into issue one for the sake of brevity.

2

approximately three minutes, before his collision with Phillips. The footage leaves few details in dispute. The footage contained the light, siren, and braking data from Officer Brown's police car, as well as a record of his speeds. The footage of Officer Brown's response to the rollover accident shows he utilized his lights, air horn, and siren, with alternating tones to alert drivers to his presence. Indicators in the video footage would light up when the siren and lights were activated, and the sirens were audible in the footage as well. The dash camera video also had an indicator designed to light up when the brakes were applied in Officer Brown's vehicle, but this indicator did not light up at any point during his response. It is unclear if Officer Brown ever applied his brakes during his emergency response and instead let off the accelerator to slow down when necessary, or if the indicator was simply in disrepair.

¶5.     The video begins by showing Officer Brown make a U-turn from his position on the edge of College Hill Road and then use the center turning lane to pass a car that does not pull to the side quickly enough. He then slows from 53 miles per hour to approximately 24 miles per hour as he drives through the first of three intersections and then turns onto McElroy Drive. On McElroy Drive, Officer Brown slows to pass multiple cars and pedestrians while traveling at speeds between 45 and 89 miles per hour. He passes through the second intersection and turns from McElroy Drive onto Molly Barr Road at a speed of approximately 24 miles per hour. On Molly Barr Road, Officer Brown reaches his top speed of 92 miles per hour, crossing a pedestrian crosswalk at 73 miles per hour in a 30-miles-per-hour zone. The parties stipulated that during this time, two officers arrived on the scene and reported

3

their presence over the radio prior to Officer Brown's collision. A later disciplinary report lists four officers who "called out" on the radio that they were on the scene. A request from an officer for a "rollback" (a tow truck) to remove the damaged vehicle can be clearly heard in the footage while Officer Brown sped down Molly Barr Road. Even so, Officer Brown did not slow his pace. All parties agree that a formal termination of the emergency response was never issued by a commanding officer or a supervising officer.

¶6.     Officer Brown approaches the third intersection—the scene of the accident—at a speed of 58 miles per hour. He slows to 45 miles per hour as he enters the intersection, and he enters the intersection against a red light. The dash camera recorded his speed at 46 miles per hour when he collides with Phillips' vehicle[2]—six miles above the posted speed limit of 40 miles per hour. Video from the side-facing camera in Officer Brown's patrol car shows Phillips' car spin almost 360 degrees after being hit and before coming to a rest facing nearly the same direction it was originally traveling. Phillips and her child were taken to the emergency room by ambulance where they were both treated for their injuries. They were discharged the same day with instructions to rest and follow up with their general practitioners. Phillips was eventually referred to physical therapy by her physician for her shoulder injury.

¶7.     Accident reports after the collision included Officer Brown's own written report, in which he acknowledged that he "was still going at a high rate of speed and . . . did not slow down enough to fully clear the intersection." Brown's supervisor, Lieutenant Alex Stratton,

---

[2] Philips was proceeding under a green light.

4

filed an accident report, which stated that "[Officer Brown] was not being vigilant enough when proceeding through the red light" and that "[Officer Brown] was informed that he was only to respond to call code if it is 100% necessary and must yield to right of way when clearing intersections." The report also documented that the collision was Officer Brown's first offense.

¶8. Officer Brown was cited by Oxford in a disciplinary report that indicated that he had committed both a safety violation and an OPD policy violation. The report stated that Officer Brown "should have known that an emergency response was no longer warranted with [four] officers out on the wreck." The report stated that Officer Brown "did not make sure the intersection was clear before proceeding" and that "Brown's actions put himself and the public at risk" when "[h]is presence was not need[ed] since there was a change in the circumstances that indicated an emergency response was no longer necessary." Officer Brown was suspended for three shifts, placed on six months of probation, and had to complete remedial emergency driving training. He was given a copy of OPD Policy 4.16 on Police Emergency Response, which governs the appropriate driving response to different levels of emergencies.

**PROCEDURAL HISTORY**

¶9. In October 2019, Phillips filed a complaint to recover for injuries suffered in the collision. Both parties filed motions for summary judgment, which were denied. At the trial, Phillips alleged that Officer Brown violated Mississippi Code Annotated section 63-3-315

5

(Rev. 2013) when he failed to safely clear the intersection before proceeding through it.[3]

Phillips' expert in accident reconstruction and police policies, Jason Walton, testified that this law was one taught to officers to prevent the type of collision that occurred at the intersection. Walton testified that this statute was taught in officer training in addition to procedures and protocols specific to each agency. Walton repeated Officer Brown's own words from his accident report that he "did not slow down enough to fully clear the intersection" to acknowledge that Officer Brown violated OPD policy and the emergency-responder statute. Walton also listed several additional factors that led to the collision, including the heavy traffic on the day of the call, Officer Brown's left view being obstructed by "a long building to the left[,] . . . a stand of large Crepe Myrtles," and Officer Brown's deposition testimony that he was traveling too fast and did not clear the intersection.

¶10. When Officer Brown testified, he described how he changed his siren tones for safety to get the attention of the public when driving. He also testified that he slowed to clear each intersection as he approached them, checking all sides to see if he had room to go through. He stated that he waited for traffic to yield before he passed and acknowledged that there were "a little bit more cars than normal" present at the intersection on the day of the collision.

¶11. Oxford Police Chief Jeff McCutchen testified both as a non-expert and as an expert in the field of law-enforcement policies and procedures on behalf of Oxford. Chief

___

[3] This statute states, "The driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety but may proceed cautiously past such red or stop sign or signal. At other times drivers of authorized emergency vehicles shall stop in obedience to a stop sign or signal." Miss. Code Ann. § 63-3-315.

McCutchen testified that even though Officer Brown was disciplined by Oxford for safety and policy violations, after reviewing the entire record, he believed Officer Brown's response was "in compliance with [his] training." Chief McCutchen also testified that Officer Brown's response was in accord with Oxford Police Department's emergency-response policy in effect at the time of the accident and that he generally complied with Policy 4.16. Chief McCutchen also noted that it was common for multiple officers to be needed at the scene to perform different tasks. He described a rollover wreck as requiring an emergency response. Chief McCutchen acknowledged that intersections were the areas of highest risk for emergency vehicles responding to emergency calls. He also conceded that although Officer Brown decreased his speed at the intersections, he "did not slow to a safe speed that allowed him to stop before entering the intersection when the vehicle was present." He further testified that Officer Brown "wouldn't know" the situation was under control based on the radio transmissions from the other officers.

¶12. The trial court held Officer Brown's actions did not rise to the level of reckless disregard because they did not demonstrate the "exceptional circumstances" under which reckless disregard can be found, and Officer Brown did not show "a conscious indifference to consequences" as was required to find liability. The trial court reasoned that Officer Brown never received a termination notice by dispatch or a supervisor who indicated to him to cease his emergency response. The trial court also noted that Officer Brown activated his lights and sirens during the response and reduced his speed when approaching intersections. The trial court also noted that in Chief McCutchen's testimony as a non-retained expert, the

7

Chief believed Officer Brown's response was appropriate under the circumstances, and in his capacity as an expert, he believed Officer Brown's response "was in accord with the Oxford Police Department's emergency-response policy." The trial court found that "[w]hile Officer Brown's actions could be considered negligent, and possibly even more than negligence . . . they do not rise to the level of reckless disregard." The trial court stated, "Officer Brown's actions exhibited some care; they did not exhibit a lack of care." The trial court made no findings regarding whether Officer Brown violated the statute that required him to "slow down as necessary for safety but . . . proceed cautiously past such red [light]" in an emergency response. Miss. Code Ann. § 63-3-315. The trial court entered its final judgment in favor of Oxford in April 2021. It is from this judgment that Phillips now appeals.

**STANDARD OF REVIEW**

¶13. "A circuit court judge sitting as the trier of fact is given the same deference with regard to his fact finding as a chancellor, and his findings are safe on appeal when they are supported by substantial, credible, and reliable evidence." *City of Vicksburg v. Williams*, 294 So. 3d 599, 601 (¶11) (Miss. 2020) (quoting *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 994 (¶7) (Miss. 2003)). "Although reasonable minds might differ on the conclusion of whether or not the officer in question acted in reckless disregard, it is beyond this Court's power to disturb the findings of the trial judge if supported by substantial evidence." *Miss. Dep't of Wildlife, Fisheries, & Parks v. Webb*, 248 So. 3d 772, 777 (¶4) (Miss. 2018) (quoting *City of Jackson v. Law*, 65 So. 3d 821, 827 (¶15) (Miss. 2011)).

8

¶14.   "This Court leaves undisturbed a circuit court's findings following a bench trial unless the findings 'are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.'" *Id.* at 776 (¶4) (quoting *City of Jackson v. Sandifer*, 107 So. 3d 978, 983 (¶16) (Miss. 2013)). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *UHS-Qualicare Inc. v. Gulf Coast Cmty. Hosp. Inc.*, 525 So. 2d 746, 754 (Miss. 1987). Finally, "[t]his Court reviews errors of law, which include the proper application of the Mississippi Tort Claims Act, de novo." *Maldonado v. Kelly*, 768 So. 2d 906, 908 (¶4) (Miss. 2000) (citing *City of Jackson v. Perry*, 764 So. 2d 373, 376 (¶9) (Miss. 2000)).

## ANALYSIS

### I.      Reckless Disregard Under the Totality of the Circumstances

¶15.   Phillips asserts that the trial court erred when it found that Officer Brown's conduct failed to rise to the level of reckless disregard based on the totality of the circumstances. We agree, and we find that substantial credible evidence does not support the trial court's findings.

### a.      *Applicable Law*

¶16.   This case was brought under the Mississippi Torts Claims Act, which " provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit." *Horton ex rel. Est. of Erves v. City of Vicksburg*, 268 So. 3d 504, 508 (¶13) (Miss. 2018) (citing *Stewart ex rel. Womack v. City of Jackson*, 804 So. 2d 1041,

1046 (¶9) (Miss. 2002)). Mississippi Code Annotated section 11-46-9 (Supp. 2016) provides

exemptions from liability. Oxford claims that it falls within the "police-protection

immunity," which states in pertinent part:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . . .
>
> > (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection *unless the employee acted in reckless disregard of the safety and well-being of any person* not engaged in criminal activity at the time of injury[.]

Miss. Code Ann. § 11-46-9(1)(c) (emphasis added). The requirement of reckless disregard

indicates that a finding of negligence or even gross negligence is insufficient to overcome

this immunity. *City of Jackson v. Presley*, 40 So. 3d 520, 523 (¶12) (Miss. 2010). "In the

context of the statute, reckless must connote 'wanton or willful,' because immunity lies for

negligence." *Turner v. City of Ruleville*, 735 So. 2d 226, 230 (¶18) (Miss. 1999).

¶17. Reckless disregard has been thoroughly defined by our appellate courts. It is "less

than an intentional act, [but] it is more than mere negligence." *Collins v. City of Newton*, 240

So. 3d 1211, 1222 (¶39) (Miss. 2018). "[R]eckless disregard embraces willful or wanton

conduct which requires knowingly and intentionally doing a thing or wrongful act." *Webb*,

248 So. 3d at 777 (¶6). Wantonness is "a failure or refusal to exercise any care, while

negligence is a failure to exercise due care." *Maldonado*, 768 So. 2d at 911 (¶12) (quoting

*Turner*, 735 So. 2d at 229 (¶16). "[W]e find reckless disregard when the 'conduct involved

evinced not only some appreciation of the unreasonable risk involved, but also a deliberate

10

disregard of that risk and the high probability of harm involved.'" *Durn*, 861 So. 2d at 995

(¶13) (quoting *Maldonado*, 768 So. 2d at 910-11 (¶11)). "While the conduct does not have

to be intentional, 'reckless disregard usually is accompanied by a conscious indifference to

consequences, amounting almost to a willingness that harm should follow.'" *City of Clinton*

*v. Tornes*, 252 So. 3d 34, 38 (¶13) (Miss. 2018) (quoting *Rayner v. Pennington*, 25 So. 3d

305, 309 (¶11) (Miss. 2010)). The Supreme Court has explained that reckless disregard by

a motorist is

> the voluntary doing by motorist of an improper or wrongful act, or with
> knowledge of existing conditions, the voluntary refraining from doing a proper
> or prudent act when such act or failure to act evinces an entire abandonment
> of any care, and heedless indifference to results which may follow and the
> reckless taking of chance of accident happening without intent that any occur.

*Presley*, 40 So. 3d at 523 (¶13) (quoting *Rayner*, 25 So. 3d at 309 (¶11)). The Supreme

Court has explained that "reckless disregard for the safety of others is synonymous with

willfulness and wantonness." *Turner*, 735 So. 2d at 230 (¶21). "Trial courts must look to

the totality of the circumstances when analyzing whether someone acted in reckless

disregard." *Webb*, 248 So. 3d at 779 (¶12).

      b.    *Substantial Evidence*

¶18.    In the present case, the trial court found there was no reckless disregard because

Officer Brown activated his lights, sirens, and air horn to warn motorists of his approach.

The trial court also noted that Officer Brown slowed his speed when approaching

intersections, which the court found "contradicted [Phillips'] assertion that . . . Officer

Brown's conduct was willful or wanton or a refusal to exercise any care." The trial court

found that "Officer Brown's actions exhibited some care; they did not exhibit a lack of care." But substantial evidence does not support this finding.

¶19. Exercising a modicum of care by turning on lights and sirens does not give emergency responders a free pass to put the safety of others at risk. The minimal safeguards that Officer Brown took when he turned on his lights and sirens and slowed down so as not to run into vehicles ahead of him do not give Officer Brown the freedom to drive recklessly. The definitions our Court utilizes for reckless disregard define *wantonness* as "a failure or refusal to exercise any care." *Maldonado*, 768 So. 2d at 911 (¶12). But reckless disregard encompasses *willfulness* in addition to wantonness. *Webb*, 248 So. 3d at 777 (¶6). While not yet explicitly defined by our Courts, willfulness would seem to encompass the language from cases defining reckless disregard that refers to "conscious indifference to consequences, amounting almost to a willingness that harm should follow" and an "appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk." *See Tornes*, 252 So. 3d at 38 (¶13); *Durn*, 861 So. 2d at 995 (¶13). Given that reckless disregard encompasses both willful *or* wanton conduct, it is an error for the trial court to say that if an emergency responder exercises "some care," this act defeats any chance a plaintiff has of recovery for reckless behavior by emergency responders.

¶20. The trial court found that the present case was similar to other cases where we have found no reckless disregard. But we disagree. In *Maldonado*, an officer collided with the plaintiff at a dangerous two-stop intersection in which cross-traffic did not stop and the view

12

was partially obstructed.[4] *Maldonado* 768 So. 2d at 908 (¶2). There, the Supreme Court found the officer did not act with reckless disregard because he came to a complete stop upon reaching the intersection, looked to his right and left for oncoming traffic before proceeding through the intersection, but ultimately collided with the plaintiff. *Id*. at (¶3). The Court noted that the officer "exercised due care and obeyed the traffic laws." *Id*. at 911 (¶12). The Court reasoned that "[the officer] did what any ordinary person in his situation would have done. He stopped, looked, and then proceeded. The only other alternative he had was . . . to put his car in park, exit the vehicle, walk out into the intersection, look both ways, return to his vehicle, and simply hope that no other car came along during the time it took him to get back in his car and proceed." *Id*. The *Maldonado* court found that "[a]lthough [the officer] may have been negligent, his actions do not rise to the level of reckless disregard." *Id*.

¶21.     In *Presley*, the Supreme Court found no reckless disregard when an officer struck a vehicle while crossing a busy intersection where the traffic signal facing her was red. *Presley*, 40 So. 3d at 521 (¶¶3-4). The officer and plaintiff were unable to see one another due to a large truck in the second lane. *Id.* at (¶4). In that case, the officer exercised safety precautions by not only employing her lights and sirens, but also crossing the multiple lanes of traffic one lane at a time at approximately 5 miles per hour. Furthermore, the officer had unsuccessfully attempted to take alternate routes in order to avoid the "five-points" intersection, which was known to be dangerous. *Id*. at 524 (¶17). The Supreme Court held that "as a matter of law that her actions do not 'evince an abandonment of all care,' or show

---

[4] The officer was taking his patrol car to a repair shop, not responding to an emergency, and no lights and sirens were activated. *Maldonado* 768 So. 2d at 908 (¶2).

a 'conscious indifference to consequences, amounting almost to a willingness that harm should follow,' or that her actions were worse than gross negligence." *Id*. (quoting *Rayner*, 25 So. 3d at 309 (¶11); *Maldonado*, 768 So. 2d at 910 (¶8)).

¶22.   In *Davis v. Latch*, 873 So. 2d 1059 (Miss. Ct. App. 2004), an officer using his lights and sirens was found by this Court not to have acted with reckless disregard when he collided into a van in an intersection controlled by a four-way stop sign. *Id.* at 1060-61 (¶¶2-3).  In that case the officer was traveling at approximately 37 miles per hour as he began to apply the brake to enter the intersection.  *Id*. at 1061 (¶3).  After determining the intersection was safe to enter, the officer began to accelerate, but when the plaintiff made a sudden left turn in front of him, the two vehicles collided.  *Id*. at (¶4).  The Supreme Court found "no indication that [the officer] acted with deliberate disregard of the consequences of attempting to cross the intersection. . . . To the contrary, there is every indication that [the officer] was aware of the nature of the intersection and took specific steps to avoid any accidents." *Id*. at 1063 (¶15).

¶23.   In *McKay v. Choctaw County ex rel. Choctaw County Board of Supervisors*, 312 So. 3d 404 (Miss. Ct. App. 2021), which the trial court found to be particularly instructive, we found no reckless disregard when a deputy traveling 10 miles per hour over the speed limit on Highway 12 en route to an emergency was broadsided by a truck, resulting in a second collision with the plaintiff. *Id*. at 407-08 (¶¶2, 8).  There, the officer testified that he activated his lights and sirens, but on his way to the emergency he passed two vehicles in front of him on the highway.  *Id*. at 407 (¶¶2-3).  There was no testimony that the officer passed the two

vehicles illegally. *Id*. at 413 (¶30). A pickup truck driver, who testified that he did not see the officer as the officer passed the two vehicles, pulled out from a side street and collided with the officer, who was then forced into a collision with McKay. *Id*. at 408-09 (¶¶8, 12). In that case, this Court upheld a finding of lack of reckless disregard by the officer because "a reasonable fact-finder could find that the cause of this unfortunate wreck was [the pickup truck driver's] negligence in driving directly into the side of [the officer's] patrol car." *Id*. at 413 (¶31). We found the officer "was not deliberately or consciously indifferent to any high probability of harm." *Id*. This Court held that a fact-finder could find that "some care" was used in the officer's response. *Id*.

¶24.    We must note that in making the previous statement we did not intend for courts to determine that any modicum of care displayed by emergency responders would suffice to relieve municipal liability for their reckless conduct without a full review of the totality of the circumstances. It is clear that the officer in *McKay*, under a totality-of-the-circumstances analysis, exercised a great deal more than minimal precautions in his emergency response. *Id*. at 407, 413 (¶¶2-4, 28-30). His only negligent act was speeding 10 miles per hour over the speed limit on a highway. *Id*. at 413 (¶28). In that case, the accident was caused by another driver. *Id*. at (¶31). McKay used adequate care in his emergency response. *Id*. To apply this language, as the trial court has done, to reason that any minor indication of care on the part of the officer can relieve the officer of liability for both willful and wanton behavior, without looking at the totality of the circumstances, is error.

¶25.    Furthermore, the facts in *Maldonado*, *Presley*, *Davis*, and *McKay* are readily

15

distinguishable from the case at hand. In these cases, the officers were all utilizing some care that went beyond merely activating lights and sirens and slowing to turn or avoid hitting cars in front of them. The officer in *Maldonado* came to a complete stop at the busy intersection, *Maldonado*, 768 So. 2d at 911 (¶12), while in *Presley* the officer attempted to cross at 5 miles per hour. *Presley*, 40 So. 3d at 521-22 (¶¶4-5). In contrast, in the present case Officer Brown approached the intersection at a speed of 58 miles per hour and was recorded crossing it at 46 miles per hour. Officer Brown was driving at speeds of 40 to 50 miles per hour over the speed limit down residential roads, not the mere 10 miles per hour over the speed limit on a highway like in *McKay*. Additionally, another driver was not at fault or partially at fault for causing the accident like in *Davis* or *McKay*.

¶26.    The instant case more closely resembles the facts in *City of Jackson v. Brister*, 838 So. 2d 274 (Miss. 2003), and *Maye v. Pearl River County*, 758 So. 2d 391 (Miss. 1999), in which courts have found reckless disregard present. In *Brister*, a police pursuit case, police officers were found to have engaged in reckless disregard when they failed to follow the police department's general order to only pursue known felons and instead engaged in a high-speed chase in a heavily populated area "through residential areas including apartment complexes, single-family housing and condominiums, a park, and even past an elementary school," traveling in excess of 20 miles per hour over the speed limit. *Brister*, 838 So. 2d at 280 (¶21). The pursuit resulted in a collision of the suspect with another vehicle. *Id*. The police officers in *Brister* also testified that they responded with the minimal precaution of activating their blue lights and sirens, as Officer Brown did in the present case. *Id*. at (¶¶17, 40). In

16

*Brister* the use of lights and sirens was not enough to prevent a finding of reckless disregard when the court considered the totality of the circumstances. *Id*. at 281 (¶23). There, the Court affirmed that Brister had shown

> that the officers initiated a high speed chase with "conscious indifference" knowing they had not complied with Order 600–20 which was the existing governing policy of the police department at that time. Without adhering to that policy, the officers should have reasonably expected the possibility of adverse consequences including a fatal accident, thus plaintiffs clearly proved reckless disregard to the general public safety.

*Id*. at 281 (¶23).

¶27.     In *Maye*, an officer's actions were taken in reckless disregard when he backed up an incline, which was the entrance to a parking lot, knowing he could not be sure the area was clear. *Maye*, 758 So. 2d at 395 (¶24). The officer took the minimal precaution of checking his mirror before backing up, but acknowledged that he could not see approaching traffic by only using the mirrors because his view of the road was obstructed. *Id*. at 394 (¶18, 22). Even though the plaintiff behind the officer blew her horn as he approached, the officer never stopped and ultimately collided with her vehicle. *Id*. at (¶18). The Court determined that the excessive damage to the plaintiff's vehicle indicated that the officer was traveling "much too fast." *Id*. at 395 (¶22). The Supreme Court found that the actions "[rose] to the level of reckless disregard because [the officer] showed a conscious disregard for the safety of others when he backed up the incline entrance to the parking lot knowing he could not be sure the area was clear." *Id*. at (¶24).

¶28.     In the present case, Officer Brown crossed two pedestrian cross-walks on his three-minute drive, and he passed two pedestrians and a biker traveling in the bike lane. His

17

approach forced approximately thirteen cars in front of him into the bike lane as he drove along, some very abruptly. Oxford argues that Officer Brown was traveling 46 miles per hour as he turned in the intersection—only six miles over the posted speed limit. But the statute here requires emergency responders to "slow down as necessary for safety [and] proceed cautiously past such red or stop sign or signal." Miss. Code Ann. § 63-3-315. Entering an intersection at six miles per hour over the speed limit is not "proceed[ing] cautiously." Furthermore, the officer obviously did not slow down "as necessary," or he would not have collided with Phillips. If someone (such as Phillips) did not see Officer Brown, there was going to be an accident because Officer Brown could not stop at those speeds. These facts fit the "exceptional circumstances" under which reckless disregard is found; Officer Brown initiated his emergency response with "conscious indifference" to the general safety of the public in violation of OPD policy and of the emergency-responder statute.

¶29. To conclude, in the present case overwhelming evidence exists that Officer Brown acted in reckless disregard to the general safety of the public. The collision with Phillips at 46 miles per hour in the middle of an intersection shows Officer Brown's failure to comply with the emergency-responder statute. Phillips' expert testified that these statutes are in place to protect the public from accidents during emergency response and that officers are taught these statutes in their training. Officer Brown provided no reason for his deviation from this statute's requirements. The response took place in a residential area that had speed limits ranging from 30 to 45 miles per hour. Officer Brown responded at speeds far in excess

18

of those limits, although multiple officers had "called out" that they had arrived on-scene. He used the minimal precautions of activating his lights, sirens, and air horn, and he slowed down when cars in front of him had not yet pulled to the side of the road. He committed a safety and policy violation per the city of Oxford's own report, and he violated a state statute by failing to slow down and proceed cautiously through the intersection. Without adhering to the emergency-response statute, Officer Brown should have reasonably expected the possibility of adverse consequences, including a serious accident. Because of this evidence, Phillips proved with an overwhelming amount of evidence that Officer Brown acted with reckless disregard to the general public's safety. His conduct evinced a "conscious indifference" to the consequences of these violations. His training, which ensured that he had "some appreciation of the unreasonable risk" he took in his response, did not prevent him from showing a "deliberate disregard" of the risk—willful conduct that led to the automobile accident and Phillips' injuries. Furthermore, as illustrated in *Brister* and *Maye*, a minor precaution taken by an officer will not overcome an overwhelming amount of evidence of reckless disregard under a totality-of-the-circumstances review.

c. *Credible Evidence*

¶30. Next, the trial court's final judgment referred to Chief McCutchen's testimony that Officer Brown's response "was appropriate given the circumstances" and "in accord with Oxford Police Department's emergency-response policy effective at the time of the accident." However, this evidence from Chief McCutchen was not credible. The disciplinary/counseling report given to Officer Brown notes that he committed both a safety

19

violation and a policy violation. Specifically, the report stated:

> Officer Brown should have known that an emergency response was no longer warranted with 4 officers out on the wreck. Officer Brown then approached the intersection of North Lamar and Molly Barr at approximately 60 MPH. Officer Brown had a red light and only slowed to approximately 50 MPH. He did not make sure the intersection was clear before proceeding. Officer Brown then hit a vehicle that had a green light causing both vehicles to be totaled out and a passenger to be transported to the hospital. Officer Brown's actions put himself and the public at risk on a call where multiple officers had already called out on scene. His presence was not need[ed] since there was a change in the circumstances that indicated an emergency response was no longer necessary.

If Officer Brown had acted "in accord with . . . [the] emergency-response policy," as Chief McCutchen says, he would not have been disciplined by Oxford for a policy violation. And if his actions were "appropriate given the circumstances," then Office Brown would not have been cited by Oxford for a safety violation. Accordingly, we find that this evidence of the appropriateness of Officer Brown's response is not credible.

## II. Reckless Disregard as a Matter of Law for Statutory or Policy Violations

¶31. Phillips next asks that this Court determine whether Officer Brown's violation of Mississippi Code Annotated section 63-3-315 and his violation of police department policy (as evidenced by his disciplinary report) should constitute reckless disregard as a matter of law. However, we decline to create a new doctrine of "reckless disregard per se" and will continue to examine each reckless disregard case using the totality-of-the-circumstances analysis.

¶32. Phillips argues that the failure to comply with a statute logically amounts to recklessness, and analogizes the doctrine of negligence per se. Negligence per se "is a form

20

of ordinary negligence, that enables the courts to use a penal statute to define a reasonably prudent person's standard of care. . . . [T]he effect of declaring conduct negligent per se is to render the conduct negligent as a matter of law." *Williams ex rel. Raymond v. Wal-Mart Stores E., L.P.*, 99 So. 3d 112, 116 (¶15) (Miss. 2012). But our standard in the present case is reckless disregard, which we have stated "is more than mere negligence" and rises to a higher standard than gross negligence. *Durn*, 861 So. 2d 994 (¶10). Given this law, the negligence per se doctrine is not analogous to the reckless disregard analysis.

¶33. Furthermore, our Courts already have addressed the question of whether policy violations or traffic-based statutory violations should be considered reckless disregard as a matter of law. In *Webb* after an officer violated a safety policy, the Supreme Court explicitly stated, "Mississippi precedent establishes that a violation of a [standard operating procedure] does not alone establish reckless disregard. . . . [T]rial courts must "look to the totality of the circumstances when analyzing whether someone acted in reckless disregard." *Webb*, 248 So. 3d at 779 (¶12) (citations and internal quotation marks omitted). In *Morton v. City of Shelby*, 984 So. 2d 323 (Miss. Ct. App. 2007), an officer struck a jogger on the side of the road at night. *Id*. at 327 (¶2). The plaintiff alleged the officer was speeding. *Id*. at 332 (¶22). In dicta, this Court stated:

> While the fact that [the officer] was speeding might indicate negligence, it is the much higher standard of reckless disregard that Morton must demonstrate. The mere act of speeding, with no indication as to how far in excess of the speed limit he was traveling, falls far short of demonstrating willful or wanton conduct.

*Id.* Said another way, although the officer may have violated a traffic-based statute, this

21

Court still conducted a totality-of-the-circumstances analysis to determine whether the officer acted with reckless disregard. *Id*. at (¶¶22-23); *accord Carothers v. City of Water Valley*, 242 So. 3d 138 (Miss. Ct. App. 2017).

¶34. Our appellate courts have repeatedly affirmed the totality-of-the-circumstances analysis. *E.g.*, *City of Jackson v. Gardner*, 108 So. 3d 927, 929 (¶7) (Miss. 2013). Moreover, we have held "The nature of the officers' actions is judged on an objective standard with all the factors that they were confronted with, . . . taking into account the fact that the officers must make split-second decisions." *Id*. (quoting *City of Jackson v. Powell*, 917 So. 2d 59, 72 (¶47) (Miss. 2005)). The violation of a life-saving policy can provide strong support that an officer was indeed reckless. *See City of Jackson v. Johnson*, 343 So. 3d 356, 378 (¶¶57, 59) (Miss. 2022). We see no reason to change course from the previously affirmed totality-of-the-circumstances analysis to allow for "reckless disregard per se."

**CONCLUSION**

¶35. To conclude, we find that the minimal precaution of turning on lights and sirens does not give an officer a free pass to engage in other actions that show reckless disregard for the safety of others when responding to an emergency. This rationale is especially true when the totality of the circumstances points to willful behavior that indicates a "conscious indifference to the consequences" or an "appreciation of the unreasonable risk involved [and] a deliberate disregard of that risk and the high probability of harm involved." *Tornes*, 252 So. 3d at 38 (¶13); *Durn*, 861 So. 2d 995 (¶13). The trial court's finding that Officer Brown's actions do not rise to the level of reckless disregard is against the overwhelming

22

weight of the evidence and must be reversed. Hence, we reverse the trial court's judgment and remand for a determination of damages.

¶36.    **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., McDONALD AND McCARTY, JJ., CONCUR. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, P.J., SMITH AND EMFINGER, JJ.    GREENLEE, J., NOT PARTICIPATING.**

**LAWRENCE, J., DISSENTING:**

¶37.    I disagree with the majority's decision to reverse the circuit court's judgment because it was not supported by the "overwhelming weight of the evidence." We often quote the standard of review in cases before this Court, and I know this Court takes seriously those words and their meaning in performing our appellate duties. An examination of the standard of review when a judge sits as the trier of fact compels the reason I dissent.

¶38.    "[W]e apply the substantial-evidence standard of review" to "the factual findings of [a] circuit court sitting as the sole trier of fact in a bench trial . . . ." *City of Jackson v. Hilton*, 324 So. 3d 1164, 1170 (¶18) (Miss. Ct. App. 2021) (quoting *Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 23 (¶35) (Miss. Ct. App. 2012)). "[W]e must accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the circuit court's findings of fact." *Id.* (internal quotation marks omitted) (quoting *Univ. Med. Ctr. v. Martin*, 994 So. 2d 740, 747 (¶26) (Miss. 2008)).

¶39.    The circuit court has the sole authority for determining the credibility of witnesses when it sits as the trier of fact. *City of Jackson v. Lipsey*, 834 So. 2d 687, 691 (¶14) (Miss.

2003). A circuit court judge sitting as the trier of fact is given the same deference with regard to his factual findings as a chancellor, "and his findings are safe on appeal whe[n] they are supported by substantial, credible, and reasonable evidence." *Maldonado v. Kelly*, 768 So. 2d 906, 908 (¶4) (Miss. 2000). Questions concerning the application of the MTCA are reviewed de novo. *Donaldson v. Covington County*, 846 So. 2d 219, 222 (¶11) (Miss. 2003). Immunity is a question of law. *Mitchell v. City of Greenville*, 846 So. 2d 1028, 1029 (¶8) (Miss. 2003).

¶40. Here, the circuit judge reviewed all the evidence presented to him, and the judge found substantial evidence that Officer Brown's actions did not rise to the level of reckless disregard. Specifically, the circuit judge found the following: (1) Officer Brown collided with Phillips while traveling six miles per hour over the posted speed limit; (2) Officer Brown activated his lights and sirens "as a warning to motorists of his traveling above the posted speed limit" miles before the collision; (3) Officer Brown activated an "air horn" to provide further warning; (4) Dash camera footage showed other motorists pulled over as Officer Brown approached them, obviously proving he was observed as a result of lights and sirens he had activated; and (5) Officer Brown "slowed his speed" as he approached the intersection. The circuit judge explained that these "documented actions" show that Officer Brown's conduct was not willful or wanton and did not show a refusal to exercise any care. These findings are supported by substantial, credible, and reasonable evidence. *See City of Jackson v. Perry*, 764 So. 2d 373, 376 (¶9) (Miss. 2000). Therefore, this Court should not reverse the trial court's factual findings.

¶41.    Several cases exist where the Mississippi Supreme Court and this Court have reviewed findings that an officer was not reckless when the officer was involved in a wreck during the performance of his duties. *See City of Clinton v. Tornes*, 252 So. 3d 34, 38-39 (¶¶15, 17) (Miss. 2018) (finding that an officer was not reckless when he traveled at low speeds in response to an intoxicated person lying on the ground and when he "pulled out further . . . than normal" to ensure his view was not obstructed by objects in a parking lot); *City of Jackson v. Presley*, 40 So. 3d 520, 524 (¶17) (Miss. 2010) (holding an officer was not reckless when she responded to an emergency call with her blue lights and siren on, activated her buzzer, and searched for alternate routes before crossing multiple lanes of traffic one lane at a time); *Maldonado*, 768 So. 2d at 911 (¶12) (stating that an officer was not reckless when he stopped at an intersection, "looked both ways, saw nothing, proceeded into the intersection, and collided" with another vehicle); *Carothers v. City of Water Valley*, 242 So. 3d 138, 143 (¶20) (Miss. Ct. App. 2017) (finding that an officer was not reckless when he rear-ended a car that stopped and had no brake lights, he was traveling under the speed limit, and he looked away for a moment to use his cell phone since his radio was inoperable); *Davis v. Latch*, 873 So. 2d 1059, 1063 (¶17) (Miss. Ct. App. 2004) (holding that an officer was not reckless when he was traveling thirty-seven miles per hour with his blue lights, sirens, and "wigwags" activated as he approached an intersection).  In each of the cases  above the trial judge found, and the appellate court affirmed, that the officer had not acted in reckless disregard as a result of actions the officer took prior to the accident.  In each case, the appellate court deferred to the trial judge as the trier of fact and affirmed by following the

25

applicable standard of review.

¶42.    It is not an appellate court's job to reweigh the facts and yield a decision consistent with our opinion of the facts.  Rather, as the standard of review clearly states, we affirm if there is substantial, credible, and reasonable evidence to support the trial court's findings. *See supra* at ¶¶38-39.  In this case, the circuit judge balanced the officer's use of the tools available to him to ensure a quick response to a serious accident against the need for public safety.  The judge found that substantial, credible, and reasonable evidence proved the officer activated his siren and blue lights and slowed upon approaching the intersection.  The judge determined that those facts, among others cited, proved the officer was not acting in reckless disregard.

¶43.    As the supreme court stated, "[a]lthough reasonable minds might differ on the conclusion of whether or not the officer in question acted in reckless disregard, it is beyond this Court's power to disturb the findings of the trial judge if supported by substantial evidence." *City of Ellisville v. Richardson*, 913 So. 2d 973, 978 (¶15) (Miss. 2005).  Here, the circuit court's judgment was supported by substantial evidence.  Therefore, we should affirm.  Accordingly, I respectfully dissent.

**WILSON, P.J., SMITH AND EMFINGER, JJ., JOIN THIS OPINION.**