# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CT-00639-SCT

*PATRICIA PHILLIPS, INDIVIDUALLY AND AS THE NATURAL MOTHER AND NEXT FRIEND OF ADDISON PHILLIPS, A MINOR*

*v.*

*CITY OF OXFORD, MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/30/2021 |
| TRIAL JUDGE: | HON. GRADY FRANKLIN TOLLISON, III |
| TRIAL COURT ATTORNEYS: | BRADFORD KEITH MORRIS |
| | WILTON V. BYARS, III |
| | JOSEPH MILES FORKS |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BRADFORD KEITH MORRIS |
| ATTORNEYS FOR APPELLEE: | WILTON V. BYARS, III |
| | JOSEPH MILES FORKS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 08/03/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     While responding to an emergency dispatch, City of Oxford Police Officer Matthew Brown collided with Patricia Phillips's vehicle at an intersection.  Phillips filed a civil action on behalf of herself and her minor child against the City of Oxford, Mississippi, to recover for injuries suffered in the collision.  After a bench trial, the Lafayette County Circuit Court

found that Officer Brown did not act with reckless disregard in response to the emergency and determined that the City of Oxford was entitled to police-protection immunity under the Mississippi Tort Claims Act.

¶2. Phillips appealed, alleging that Officer Brown's conduct in causing the collision rose to the level of reckless disregard as a matter of law and, alternatively, that the trial court abused its discretion because no reasonable finder of fact could determine otherwise. The Court of Appeals reversed in *Phillips v. City of Oxford*, No. 2021-CA-00639-COA, 2022 WL 4353326, at *9 (¶ 35) (Miss. Ct. App. Apr. 30, 2021). The majority held that the trial court's finding that Officer Brown's actions did not rise to the level of reckless disregard is against the overwhelming weight of the evidence and that Oxford is not entitled to police-protection immunity. *Id.* at *9 (¶ 35). The dissent's opinion said that the circuit court's judgment was supported by substantial evidence and, therefore, the Court of Appeals lacked the power to disturb the trial judge's findings. *Id.* at *11(¶¶ 42, 43) (Lawrence, J., dissenting).

¶3. We granted the City of Oxford's petition for writ of *certiorari*. Because the record contains substantial evidence to support the trial court's decision, we reverse the decision of the Court of Appeals and reinstate and affirm the decision of the trial court.

## FACTS

¶4. On September 13, 2018, a general callout for assistance regarding a rollover wreck with unknown injuries was placed around 4:09 p.m. near the interchange of Highway 7 North and Sisk Avenue in Oxford, Mississippi. At the time of the callout, Officer Matthew Brown

was parked in a patrol car on the shoulder of Highway 314, approximately two and a half miles from the scene of the accident. After hearing the call for assistance, Officer Brown proceeded to the scene of the wreck.

¶5.     Dash camera video introduced at trial documented the speeds at which Officer Brown was traveling throughout his response. The video shows that Officer Brown reduced his speed when approaching intersections and other drivers and that his patrol car's lights and sirens were activated throughout the time he traveled to the wreck. Officer Brown's top speed traveling to the wreck was ninety-two miles per hour.

¶6.     Dispatch records indicated that two officers arrived at the rollover scene by 4:11 p.m. The parties stipulated, however, that no termination notice was ever issued by dispatch or a supervising officer.

¶7.     When Officer Brown approached the intersection of Molly Barr Road and North Lamar Boulevard, he slowed his speed to approximately fifty miles per hour. The speed limit at that intersection is forty miles per hour. Officer Brown entered the intersection against a red light, and collided with the right rear side of Phillips's vehicle. Phillips had a green light. Officer Brown was traveling forty-six miles per hour at the time of impact. Phillips and her minor child, Addison Phillips, were taken to the emergency room where they were treated for injuries. They were discharged the same day.

¶8.     In Officer Brown's own written report, he acknowledge that he "was still going at a high rate of speed . . . [and] did not slow down enough to fully clear the intersection." Lieutenant Alex Stratton, Officer Brown's supervisor, filed an accident report in which he stated that "[Officer Brown] was not being vigilant enough when proceeding through the red

3

light" and that "[Officer Brown] was informed that he was only to respond to call code if it is 100% necessary and must yield to right of way when clearing intersections."

¶9.   Officer Brown was also cited by the City of Oxford in a disciplinary report that indicated he had committed a safety violation and an Oxford Police Department (OPD) policy violation.[1]  As a result, Officer Brown was suspended for three shifts, was placed on six months of probation, and was required to complete remedial emergency driving training.

## PROCEDURAL BACKGROUND AND TRIAL

¶10.   The City of Oxford received Phillips's notice of claim on July 24, 2019.  Phillips filed her Complaint on October 23, 2019, pursuant to the Mississippi Tort Claims Act and claimed that Officer Brown's "actions and inactions . . . evidence a reckless disregard for the safety of [Phillips], and [m]inor [c]hild, and other citizens on the roadway at the time of the collision."  In her complaint, Phillips alleged that Officer Brown's actions were a direct violation of Mississippi Code Section 63-3-315, which provides:

> The driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety but may proceed cautiously past such red or stop sign or signal. At other times drivers of authorized emergency vehicles shall stop in obedience to a stop sign or signal.

Miss. Code Ann. § 63-3-315 (Rev. 2022).  The parties filed opposing motions for summary judgment, but both were denied.

---

[1] Officer Brown was given a copy of OPD Policy 4.16 on Police Emergency Response & Vehicle Warning Devices, which "establishes procedures for the conduct of pursuits and emergency responses by officers of Oxford Police Department."

¶11. A bench trial was held before the Lafayette County Circuit Court on March 29-30, 2021. At trial, Oxford Police Chief Jeff McCutchen testified in his capacity as a nonretained expert that, and upon his review of the record and dash camera footage, Officer Brown's response was appropriate given the circumstances. Chief McCutchen testified that Officer Brown's response was in accord with OPD's emergency-response policy effective at the time of the accident. The OPD had disciplined Officer Brown for his speed and for not clearing the intersection before proceeding through it.

¶12. Jason Walton testified for Phillips as an accident-reconstruction and law-enforcement expert. Walton testified that in his expert opinion, Officer Brown failed to comply with emergency driving protocols during his response to the rollover wreck and that his actions were reckless under the totality of the circumstances.

¶13. Phillips testified that she did not see Officer Brown's vehicle and only heard his siren a "matter of seconds" before he hit her. Addison Phillips testified that she heard the siren approximately five seconds before impact.

¶14. The circuit judge summarized existing Mississippi law on police-protection immunity and the reckless disregard standard and ultimately ruled in favor of the City of Oxford. The judge made the following findings of fact:

1. Officer Brown was responding to a general callout to a serious accident;

2. He utilized lights, sirens, and his air horn throughout his response, including as he approached and entered the subject intersection;

3. Dash-camera footage showed other "motorists responding to these warnings by pulling over to the should of the road";

5

4.      He slowed his speed while approaching intersections; and

5.      He collided with Phillips's vehicle while traveling "6 miles per hour over the posted speed limit . . . .

Based on the above findings, the circuit court concluded that, under the totality of the circumstances, "Officer Brown's actions could be considered negligent, and possibly even more than negligence, . . . they do not rise to the level of reckless disregard." The court explained that Officer Brown "exhibited some care" and "did not show a conscious indifference to consequences."

*Court of Appeals Decision*

¶15.    The Court of Appeals reviewed the following three issues raised by Phillips: (1) whether Officer Brown's violation of Mississippi Code Section 63-3-315 constituted reckless disregard as a matter of law; (2) whether Officer Brown's violation of police department protocols, as evidenced by his documented policy violation and suspension, constituted reckless disregard as a matter of law; and (3) alternatively, whether the totality of the circumstances required a finding of reckless disregard.

¶16.    In a five-to-four decision, with one judge not participating, the Court of Appeals concluded "that substantial credible evidence does not support the trial court's findings[,]" and reversed the circuit court's final judgment and remanded for a determination of damages. ***Phillips***, 2022 WL 4353326, at *4 (¶ 15). The Court of Appeals majority submitted that because reckless disregard "encompasses both willful *or* wanton conduct, it is an error for the trial court to say that if an emergency responder exercises 'some care,' this act defeats

6

any chance a plaintiff has of recovery for reckless behavior by emergency responders." *Id.* at \*5 (¶ 19). The Court explained:

> The definitions our Court utilizes for reckless disregard define *wantonness* as "a failure or refusal to exercise any care." [*Maldonado v. Kelly*, 768 So. 2d 906, 911 (¶ 12) (Miss. 2000)]. But reckless disregard encompasses *willfulness* in addition to wantonness. [*Miss. Dep't of Wildlife, Fisheries, & Parks v. Webb*, 248 So. 3d 772, 777 (¶ 6) (Miss. 2018)]. While not yet explicitly defined by our Courts, willfulness would seem to encompass the language from cases defining reckless disregard that refers to "conscious indifference to consequences, amounting almost to a willingness that harm should follow" and an "appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk."

*Id.* at \*5 (¶ 19).

¶17.    Applying the "willful and wanton" standard, the Court of Appeals majority concluded that "[t]hese facts fit the 'exceptional circumstances' under which reckless disregard is found; Officer Brown initiated his emergency response with 'conscious indifference' to the general safety of the public in violation of OPD policy and of the emergency-responder statute." *Id.* at \*7 (¶ 28). The majority acknowledged, however, that statutory or policy violations would not amount to reckless disregard *per se* under the totality of the circumstances. *Id.* at \*8 (¶ 31).

¶18.    The Court further found Chief McCutchen's testimony that Officer Brown's response "was appropriate given the circumstances" and "in accord with Oxford Police Department's emergency-response policy effective at the time of the accident" was not credible evidence. *Id.* at \*8 (¶ 30) (internal quotation marks omitted). The Court explained that "[t]he disciplinary/counseling report given to Officer Brown notes that he committed both a safety

7

violation and a policy violation" and that if he had acted in accord with the policy, he would not have been disciplined. *Id.*

¶19. Judge Lawrence's dissenting opinion, on the other hand, emphasized the applicable substantial-evidence standard of review, stating that "it is beyond this Court's power to disturb the findings of the trial judge if supported by substantial evidence." *Id.* at *11 (¶ 43) (Lawrence, J. dissenting) (internal quotation mark omitted) (quoting *City of Ellisville v. Richardson*, 913 So. 2d 973, 978 (¶ 15) (Miss. 2005)). According to Judge Lawrence, "the circuit judge balanced [Officer Brown's] use of the tools available to him to ensure a quick response to a serious accident against the need for public safety." *Id.* (¶ 42). Judge Lawrence concluded that because "the circuit judge reviewed all the evidence presented to him, and . . . found substantial evidence that Officer Brown's actions did not rise to the level of reckless disregard[,]" the circuit court's judgment should have been affirmed. *Id.* at *10 (¶ 40), *11 (¶ 43).

## DISCUSSION

### I.    Standard of Review

¶20. The standard of review we apply to a trial court's decision after a bench trial under the tort claims act is well settled. *City of Jackson v. Powell*, 917 So. 2d 59, 68 (¶ 34) (Miss. 2005). "A circuit court judge sitting as the trier of fact is given the same deference with regard to his fact finding as a chancellor, and his findings are safe on appeal when they are supported by substantial, credible, and reliable evidence." *City of Vicksburg v. Williams*, 294 So. 3d 599, 601 (¶ 11) (Miss. 2020) (internal quotation marks omitted) (quoting *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 994 (¶ 7) (Miss. 2003)). We "will not disturb

8

a circuit court's . . . [fact] findings after a bench trial unless they are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Powell*, 917 So. 2d at 68 (¶ 34) (citing *City of Jackson v. Perry*, 764 So. 2d 373, 376 (Miss. 2000)). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *UHS-Qualicare Inc. v. Gulf Coast Cmty. Hosp. Inc.*, 525 So. 2d 746, 754 (Miss. 1987). Moreover, the circuit court, in its role as the finder of fact, has "the sole authority" for assessing witness credibility. *City of Jackson v. Brister*, 838 So. 2d 274, 279 (¶ 19) (Miss. 2003) (citing *Yarbrough v. Camphor*, 645 So. 2d 867, 869 (Miss. 1994)). Importantly, while "reasonable minds might differ on the conclusion of whether or not the officer in question acted in reckless disregard, it is beyond this Court's power to disturb the findings of the trial judge if supported by substantial evidence." *Webb*, 248 So. 3d at 777 (¶ 4) (internal quotation mark omitted) (quoting *Richardson*, 913 So. 2d at 978 (¶ 15)). On the other hand "[t]he proper application of the MTCA is a question of law, which we review de novo." *City of Jackson v. Sandifer*, 107 So. 3d 978, 983 (¶ 16) (Miss. 2013) (citing *Powell*, 917 So. 2d at 68 (¶ 34)).

## II.     Reckless Disregard

¶21.    Under the tort claims act, "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim" that

> arise[s] out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection *unless the employee acted in reckless disregard* of the safety and well-being of any person not engaged in criminal activity at the time of injury . . . .

9

Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2019). Cases brought under the tort claims act are subject to a bench trial, with the judge sitting as both the finder of fact and law. Miss. Code Ann. § 11-46-13(1) (Rev. 2019).

¶22. We have recognized that the purpose of Mississippi Code Section 11-46-9 is to "protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim." *Perry*, 764 So. 2d at 379 (¶ 25). "By requiring a finding of 'reckless disregard of the safety and well-being of others,' the Legislature set an extremely high bar for plaintiffs seeking to recover against a city for a police officer's conduct while engaged in the performance of his or her duties." *City of Jackson v. Presley*, 40 So. 3d 520, 523 (¶ 12) (Miss. 2010). "Police officers and fire fighters are more likely to be exposed to dangerous situations and to liability, and therefore, public policy requires that they not be liable for mere negligence[,]" but for "reckless acts only." *Maldonado*, 768 So. 2d at 909 (¶ 6) (citing *Maye v. Pearl River Cnty.*, 758 So. 2d 391 (Miss. 1999)).

¶23. We have held that "[r]eckless disregard" under Section 11-46-9(1)(c) "is a higher standard than gross negligence" and "embraces willful and wanton conduct which requires knowingly or intentionally doing a thing or wrongful act." *Williams*, 294 So. 3d at 601-02 (¶ 15) (internal quotation marks omitted) (quoting *Collins v. Tallahatchie Cnty.*, 876 So. 2d 284, 287 (¶ 8) (Miss. 2004)). "[W]antonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." *Maldonado*, 768 So. 2d at 910 (¶ 8) (internal

10

quotation marks omitted) (quoting *Turner v. City of Ruleville*, 735 So. 2d 226, 229 (¶ 16) (Miss. 1999)). The Court in *Turner* defined *reckless disregard* as:

> the voluntary doing by motorist of an improper or wrongful act, or with knowledge of existing conditions, *the voluntary refraining from doing a proper or prudent act when such act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the reckless taking of chance of accident happening without intent that any occur . . . .*

*Turner*, 735 So. 2d at 229 (¶ 11) (quoting *Reckless disregard*, Black's Law Dictionary (6th ed. 1991)). Reckless disregard "usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Maye*, 758 So. 2d at 394 (¶ 19) (quoting *Orthopedic & Sports Injury Clinic v. Wang Lab'ys Inc.*, 922 F.2d 220, 224 n.3 (5th Cir. 1991)).

¶24. The Court of Appeals correctly observed that, while policy violations and traffic-based statutory violations "can provide strong support that an officer was indeed reckless[,]" they do not constitute "reckless disregard per se." *Phillips*, 2022 WL 4353326, at *8 (¶ 34) (internal quotation marks omitted). Judicial precedent in Mississippi has long held that we look to the totality of the circumstances when determining whether someone acted in reckless disregard. *Williams*, 294 So. 3d 599, 602 (¶ 15) (Miss. 2020) (citing *Richardson*, 913 So. 2d at 978 (¶ 17)). Indeed, "[t]he nature of the officers' actions is judged on an objective standard with all the factors that they were confronted with, . . . taking into account the fact that the officers must make split-second decisions." *City of Jackson v. Gardner*, 108 So. 3d 927, 929 (¶ 7) (Miss. 2013) (second alteration in original) (internal quotation marks omitted)

11

(quoting *Powell*, 917 So. 2d at 72 (¶ 47)). We see no reason to deviate from that precedent today.

¶25. In the present matter, it is undisputed that, at the time of the callout and throughout his response, Officer Brown was acting within the course and scope of his employment. The trial judge, in his findings of facts and conclusions of law, determined the following:

1. Officer Brown was responding to a rollover wreck with unknown injuries with his lights, siren, and air horn activated throughout the response, including as he approached and entered the subject intersection;

2. Dash camera video shows motorists responding to these warnings by pulling over to the shoulder of the road;

3. Officer Brown was unaware if any officers were yet on scene;

4. Officer Brown slowed his speed while approaching intersections, including the subject intersection;

5. Officer Brown believed he had visually cleared the intersection before he entered;

6. Officer Brown collided with Phillips at approximately six miles per hour over the speed limit; and

7. The accident occurred in daylight, in a commercial area, with no pedestrians present.

¶26. In so finding, the trial judge likened the facts of the instant case to those of *McKay v. Choctaw County*, 312 So. 3d 404 (Miss. Ct. App. 2021), *Maldonado*, 768 So. 2d 906, and *Presley*, 40 So. 3d 520. In *McKay*, a sheriff's deputy responded to an accident with his lights and eventually his siren despite the fact that dispatch did not specifically request that the

deputy respond. *McKay*, 312 So. 3d at 407 (¶ 2). The deputy ultimately crashed into a pickup truck at an intersection while traveling approximately ten miles per hour over the posted speed limit immediately before the collision. *Id.* (¶ 4) The Court of Appeals upheld the trial court's finding of no reckless disregard, stating that "[a] reasonable fact-finder could . . . find that [Deputy] Miller was not deliberately or consciously indifferent to any high probability of harm[,]" *id.* at 413 (¶ 31) (citing *Williams*, 294 So. 2d at 601), and that "Miller exercised at least *some* care." *Id.* (citing *Maldonado*, 768 So. 2d at 911 (¶ 12)).

¶27. In *Maldonado*, an officer entered a known, dangerous intersection after he had stopped and looked both ways. *Maldonado*, 768 So. 2d at 908 (¶ 2), (¶ 3). The officer hit an approaching car after he did not see it, admittedly due to the fact the officer's view on his right side was partially blocked. *Id.* The Mississippi Supreme Court held that, "[a]lthough Officer Maldonado may have been negligent, his actions do not rise to the level of reckless disregard." *Id.* at 911 (¶ 12).

¶28. In *Presley*, an officer was responding to another officer's dispatch call regarding a man lying in the street, unresponsive and bleeding. *Presley*, 40 So. 3d at 521 (¶ 2). In the course of her response, the officer entered a dangerous intersection against a red light with her lights and sirens activated, and a partially obstructed view. *Id.* (¶¶ 3, 4). The officer struck an oncoming vehicle that also did not see her or hear her coming. *Id.* (¶¶ 4,5). The Mississippi Supreme Court held that the officer "exercised some measure of safety precaution by employing her blue lights and siren, activating her buzzer to alert traffic while

13

she was crossing the lanes, and crossing one lane at a time. *Id.* at 524 (¶ 17). "Such actions hardly can be characterized as reckless and indifferent to the safety of others." *Id.*

¶29.　The trial judge concluded that "[m]uch like the cases noted above, there is a demonstrable absence of reckless disregard on the part of Officer Brown." He added that "[w]hile Officer Brown's actions could be considered negligent and possibly even more than negligence . . . Officer Brown's actions exhibited some care; they did not exhibit a lack of care."

¶30.　The Court of Appeals majority disagreed, finding the instant case more closely resembled the facts in *Brister*, 838 So. 2d 274, and *Maye*, 758 So. 2d 391. In *Brister*, a police pursuit case, police officers failed to follow the police department's general order to only pursue known felons and instead engaged in a high-speed chase in a heavily populated area "through residential areas including apartment complexes, single-family housing and condominiums, a park, and even past an elementary school," traveling in excess of twenty miles per hour over the speed limit. *Brister*, 838 So. 2d at 280 (¶ 21). The chase lasted less than sixty seconds before the suspect's vehicle crashed into another vehicle on the road, resulting in the passenger's death. *Id.* at 276 (¶ 1). The police officers testified that the pursuit had been terminated, but they continued to follow the suspect to obtain her license plate, without knowing whether the suspect had committed a misdemeanor or a felony. *Id.* at 279 (¶ 16). The Mississippi Supreme Court held that the trial court did not err by finding

14

the City liable, finding "overwhelming evidence exists that the officers acted in reckless disregard to the general safety of the public." *Id.* at 281 (¶ 23).

¶31. In *Maye*, we held a deputy sheriff's actions amounted to reckless disregard when he blindly backed out of a parking space and up an incline, which was also the entrance of a parking lot. *Maye*, 758 So. 2d at 392 (¶ 3). The officer collided with a vehicle that had turned off the road onto the incline. *Id.* (¶ 5). The officer testified that, although he had checked his mirrors, he could not see the road from the parking lot because the jail was at a lower elevation than the road. *Id.* (¶ 3). When the other motorist saw the deputy backing toward her car, the deputy was forty feet away. *Id.* at 394 (¶ 18). The motorist braked and honked the horn, but the deputy continued backing and collided with her car. *Id.* at 392 (¶ 4). From the severity of the damage to the car and injuries to the passenger, it was apparent the deputy was "going much too fast to be backing up the entrance to the parking lot when he could not see what was behind him." *Id.* at 395 (¶ 22). Based on the evidence, we held the deputy had acted with conscious indifference by backing out of the driveway at a high rate of speed when he could not see what was behind him. *Id.* (¶ 21).

¶32. The facts of *Brister* and *Maye* are distinguishable from the case at hand, as they "evince[] not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of the harm involved." *Maldonado*, 768 So. 2d at 910-11 (¶ 11). In the instant case, Officer Brown exercised some measure of safety precaution by activating his lights and sirens throughout his response, activating his horn for

15

additional warning at intersections, and slowing as he approached intersections. Dash camera footage shows other motorists pulled over as Officer Brown approached them, proving he was observed as a result of his lights and sirens. Such actions cannot be characterized as reckless and indifferent to the safety of others. Although Officer Brown may have been negligent, his actions do not evince an "entire abandonment of any care[.]" ***Rayner v. Pennington***, 25 So. 3d 305, 311 (¶ 19) (Miss. 2010) (internal quotation marks omitted) (quoting ***Maldonado***, 768 So. 2d at 910 (¶ 8)).

¶33.    We emphasize that a trial judge's findings of fact following a bench trial "are subject only to a limited scope of review if the trial judge applied the appropriate legal standard." ***Univ. Med. Ctr. v. Martin***, 994 So. 2d 740, 746 (¶ 24) (Miss. 2008) (citing ***Meeks v. State***, 781 So. 2d 109, 113 (¶¶ 9, 10) (Miss. 2001)).  It is the role of the trial judge, not the Supreme Court, to resolve conflicts in the evidence, evaluate the credibility of the witnesses, and determine the weight of the evidence. ***Id.*** at 746-47 (¶¶ 24, 25).  "If there is substantial supporting evidence in the record, this Court will not reverse a trial court's findings, *even if this Court disagrees with those findings*." ***Id.*** at 747 (¶ 26) (emphasis added) (citing ***Scott Addison Const., Inc. v. Lauderdale Cnty. Sch. Sys.***, 789 So. 2d 771, 773 (¶ 8) (Miss. 2001)). We "must examine the entire record and must accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact." ***Id.*** (quoting ***Scott Addison Constr.***, 789 So. 2d at 773(¶ 8)). It is worth noting here

16

that, in *Maye*, the Court did not acknowledge the above-described standard of review applicable to the trial judge's findings of fact or discuss how the standard might have affected its holding. *Maye*, 758 So. 2d 391.

¶34. Applying our deferential standard of review, we cannot say that the trial judge clearly erred by finding that Officer Brown's conduct did not rise to the high standard of reckless disregard. The trial judge reasonably found that Officer Brown activated his lights, siren, and horn prior to the accident, slowed down at intersections, and all other cars at the subject intersection yielded to Officer Brown except Phillips's. Though Officer Brown mistakenly believed he had cleared the intersection before entering, immunity still applies for mere mistake or poor judgment. *See Maldonado*, 768 So. 2d at 909. The trial judge applied the correct legal standard, cited relevant cases discussing the meaning of the reckless disregard standard, and considered the available dash cam footage and testimony of multiple witnesses. The trial judge clearly based his findings on substantial, credible, and reasonable evidence. The judge found Officer Brown's conduct did not amount to reckless disregard by considering the totality of the circumstances.

¶35. As we have stated, "[a]lthough reasonable minds might differ on the conclusion of whether or not the officer in question acted in reckless disregard, it is beyond this Court's power to disturb the findings of the trial judge if supported by substantial evidence." *Richardson*, 913 So. 2d at 978 (¶ 15) (citing *Brister*, 838 So. 2d at 277-78 (¶ 13)). Had a jury tried the case, it could have reasonably found that the circumstances fall short of reckless

17

disregard. "It is not an appellate court's job to reweigh the facts and yield a decision consistent with our opinion of the facts." *Phillips*, 2022 WL 4353326, at *11 (¶ 42). Based on the trial judge's findings and our precedent, we reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

## CONCLUSION

¶36. It is possible that reasonable minds could differ on the question of whether Officer Brown acted in reckless disregard for the safety of others. The applicable standard of review, however, requires us to affirm a trial judge's finding when it is supported by substantial evidence. Although the Court of Appeals correctly articulated the standard of review, it did not adhere to the standard in rendering its decision. Because the trial judge's finding is supported by substantial evidence, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the circuit court.

¶37. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

**RANDOLPH, C.J., BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J. MAXWELL, J., NOT PARTICIPATING.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶38. We have held that "[r]eckless disregard occurs when the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." *City of Clinton v. Tornes*, 252 So. 3d

34, 38 (Miss. 2018) (internal quotation marks omitted) (quoting *City of Laurel v. Williams*, 21 So. 3d 1170, 1175 (Miss. 2009)). This Court has defined *reckless disregard* as

> the voluntary doing by motorist of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining from doing a proper or prudent act when such act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the reckless taking of chance of accident happening without intent that any occur.

*City of Jackson v. Presley*, 40 So. 3d 520, 523 (Miss. 2010) (quoting *Rayner v. Pennington*, 25 So. 3d 305, 309 (Miss. 2010)); *see also Tornes*, 252 So. 3d at 38 ("While the conduct does not have to be intentional, '[r]eckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.'" (alteration in original) (quoting *Rayner*, 25 So. 3d at 309)). "It is appropriate to look at the totality of the circumstances when analyzing whether someone acted in reckless disregard." *City of Vicksburg v. Williams*, 294 So. 3d 599, 602 (Miss. 2020) (citing *City of Ellisville v. Richardson*, 913 So. 2d 973, 978 (Miss. 2005)).

¶39. The majority finds that the trial court committed no reversible error because Officer Brown's actions were not "reckless and indifferent to the safety of others" since the officer took some precautions by turning on his lights and sirens and by slowing the police car as he approached intersections. Maj. Op. ¶ 32. Despite his deployment of numerous horns, whistles, and lights, the totality of the circumstances establishes that Brown's conduct evinced a reckless disregard for others around him and for the consequences of his

19

recklessness. I find that the trial court's finding is not supported by substantial, credible, and reasonable evidence. Respectfully, I dissent.

¶40.    The Court of Appeals described Officer Brown's journey to the rollover accident scene as follows:

> Officer Brown mak[es] a U-turn from his position on the edge of College Hill Road and then use[s] the center turning lane to pass a car that does not pull to the side quickly enough. He then slows from 53 miles per hour to approximately 24 miles per hour as he drives through the first of three intersections and then turns onto McElroy Drive. On McElroy Drive, Officer Brown slows to pass multiple cars and pedestrians while traveling at speeds between 45 and 89 miles per hour. He passes through the second intersection and turns from McElroy Drive onto Molly Barr Road at a speed of approximately 24 miles per hour. On Molly Barr Road, Officer Brown reaches his top speed of 92 miles per hour, crossing a pedestrian crosswalk at 73 miles per hour in a 30-miles-per-hour zone. The parties stipulated that during this time, two officers arrived on the scene and reported their presence over the radio prior to Officer Brown's collision. A later disciplinary report lists four officers who "called out" on the radio that they were on the scene. A request from an officer for a "rollback" (a tow truck) to remove the damaged vehicle can be clearly heard in the footage while Officer Brown sped down Molly Barr Road. Even so, Officer Brown did not slow his pace. All parties agree that a formal termination of the emergency response was never issued by a commanding officer or a supervising officer.
>
> Officer Brown approaches the third intersection—the scene of the accident—at a speed of 58 miles per hour. He slows to 45 miles per hour as he enters the intersection, and he enters the intersection against a red light. The dash camera recorded his speed at 46 miles per hour when he collides with Phillips' vehicle—six miles above the posted speed limit of 40 miles per hour.

***Phillips v. City of Oxford***, No. 2021-CA-00639-COA, 2022 WL 4353326, at *2 (Miss. Ct. App. 2022).

20

¶41. The trial court erred by finding that Officer Brown's reliance on the use of a siren to warn motorists of his high rate of speed negates the claim of reckless disregard. I agree with the majority of the Court of Appeals that

> Exercising a modicum of care by turning on lights and sirens does not give emergency responders a free pass to put the safety of others at risk. The minimal safeguards that Officer Brown took when he turned on his lights and sirens and slowed down so as not to run into vehicles ahead of him do not give Officer Brown the freedom to drive recklessly.

*Id.* at *5. The record is replete with credible evidence that contradicts the concept that the mere deployment of lights and sirens is sufficient to warn the public that an approaching police car is being driven at excessive speeds. Jason Walton, Phillips's expert in police policies and accident reconstruction, explained how a police car can "outrun" its siren:

> Sirens have limitations based on the area in which you are traveling. . . . [D]epending on the placement of your siren if you get too fast you will actually hear the tone of the siren change on [its] own and the reason it's changing is you are basically catching up and passing it before you audibly hear it. If you have ever been driving down the road and the moment you hear a siren all of a sudden you see a patrol vehicle fire past you way off in the distance and you barely heard the siren they are outrunning their siren. They are going at a speed fast enough to where the sound is to travel to people and people can not recognize what that sound is until before it's already passed.

Essentially, this is the equivalent of an officer's not using the siren at all. The vehicle's high speed compromises the effectiveness of the siren.

¶42. When asked at what speed a vehicle would begin to outrun a siren, Walton responded "between 50 and 65 miles per hour." Oxford Police Chief Jeff McCutchen acknowledged that while an officer can outrun his/her siren at speeds between fifty to fifty-five miles per

hour, such an officer is expected to endeavor not to outrun the siren when responding to an emergency call.

¶43.    During his testimony, Officer Brown acknowledged that he had been taught that a vehicle could outrun the sound of a siren at approximately fifty-five miles per hour. Thus, Officer Brown was aware that traveling at a high rate of speed could have a negative, nullifying effect on his siren, which could contribute to an accident. Yet he disregarded the possibility of such a dangerous consequence and approached the intersection and entered it at a rate of speed he knew could undermine the purpose of his siren.[2] Several witnesses testified that they could not hear Officer Brown's siren. Kim Melton, a witness to the collision between the vehicles being driven by Brown and Patricia Phillips, testified that she did not hear the officer's siren until "it hit." Patricia Phillips testified that she did not hear Officer Brown's siren until she was in the intersection and right before Brown crashed his vehicle into hers. Specifically, she stated:

> The siren went off and literally I was in the middle. I had already passed the line and I was already in the middle of the intersection when I heard him. So it was a split second and I was hit.

¶44.    Officer Brown knew the danger of driving on city streets at speeds that neutralized his siren and of not slowing down sufficiently before entering the intersection. While the trial court found that Brown had slowed before entering the intersection, Chief McCutchen

---

[2] Approaching the intersection, Officer Brown's speed was fifty-eight miles per hour, which is well within the range that he knew a siren can be outrun.

22

testified that the officer did not slow down enough and that he still was driving at a high rate of speed when the collision occurred. Moreover, Brown testified that he knew this typically was a busy intersection and that "you wouldn't probably see traffic until you actually reached the intersection." All of this knowledge did not deter Officer Brown from racing toward this busy intersection at a dangerous rate of speed and neither stopping nor driving through the intersection slowly. Instead, he sped toward the intersection at a speed that was eighteen miles per hour more than the posted speed limit. Officer Brown's familiarity with this hazardous intersection, combined with his high rate of speed and his failure to reduce his speed amount to a conscious indifference to the consequences of his actions and a disregard of the safety of the public around him.

¶45. In determining that Brown's actions had not been done with reckless disregard, the trial court concluded that "Officer Brown was unaware if any officers were yet on scene[.]" Maj. Op. ¶ 25. With respect to the learned trial judge, this was erroneous. While responding to the emergency call, Officer Brown received a radio call that other officers already had arrived at the accident scene and that a tow truck had been called. Yet he persisted in speeding down the heavily populated road and ultimately crashed into Phillips's vehicle, after failing to slow down adequately at the intersection. Officer Brown testified that he never heard any of the other responding officers on the radio. But the evidence from the dashcam, which was played several times throughout the trial, reveals that the other responding officers can be heard clearly on the radio as they attended to the rollover wreck. Chief McCutchen

23

acknowledged that Officer Brown had a duty and a responsibility to use and monitor the police radio, including during an emergency situation. Thus, whether Officer Brown remembered hearing the other officers reporting their presence at the rollover wreck ultimately is unimportant. It was his responsibility to pay attention to the police radio for any changes in the emergency call's circumstances. Had Brown performed that responsibility, he would have recognized that, even though the emergency call had not been terminated formally, the necessity for an all-out response by him no longer was needed, if it ever had been.

¶46.   Walton, an expert witness in police policies and accident reconstruction, testified that the presence of other officers on the scene of the rollover wreck and the radio call for a wrecker should have informed Officer Brown that the situation was "under control." Specifically, Walton testified that:

> From law enforcement aspect when the second and third officer checked out that is when Officer Brown should have kind of checked up right there. The situation is over with. You can still respond but you don't have to run blue lights and sirens code, you know, running from intersection to intersection because you are not actually of value added at that point. There is nothing you can do being the fifth officer showing up or the sixth officer or fourth officers showing up to something that people already have under control.
>
> . . . .
>
> And [Officer Brown] is trying to get to something where there are already officers responding to, they are out, they are handling it. There is nothing he can add but stand around once he gets there. And I was wondering why is he pushing that hard and I see him crest the hill and the next thing I notice was you can't see anything coming from the left and he has a red light and he is not slowing down. He slowed down some and he is still approaching the

24

intersection way too fast and you see him correct and get over to where he feels like he is straddling two lanes to go through the intersection and that is when I see that was going to be a problem right there and you see the car come into the intersection and the collision happen.

As a result of the collision with Patricia Phillips and her child, the Oxford Police Department disciplined Officer Brown for a safety violation and for violating police department policy.[3]

The disciplinary report stated:

Officer Brown should have known that an emergency response was no longer warranted with 4 officers out on the wreck. . . . He did not make sure the intersection was clear before proceeding. . . . Officer Brown's actions put himself and the public at risk on a call where multiple officers had already called out on scene. His presence was not need[ed] since there was a change in the circumstances that indicated an emergency response was no longer necessary.

¶47. The evidence shows clearly that the urgency of the situation had diminished significantly during Brown's mad rush to the scene. As Brown hurtled toward the accident scene at a grossly excessive rate of speed, what may have begun as an emergency had been reduced to a situation under control by the officers who had gotten there first. Simply, the situation at the rollover wreck was well in hand, and Officer Brown should have decreased his speed drastically as he drove toward the accident location. Instead of slowing down, Officer Brown kept speeding through the city, topping out at ninety-two miles per hour. At

---

[3]Additionally, the supervisor's accident investigation report concluded that the cause of the accident was a lack of vigilance by Officer Brown when proceeding through the red light. The report recommended also that in order to prevent recurrence "that [Brown] was only to respond to call code if it is 100% necessary and [he] must yield to right of way when clearing intersections."

25

the intersection where he encountered the Phillips's vehicle, he entered it at eighteen miles per hour over the speed limit and, ultimately, smashed into the vehicle occupied by Phillips and her child going six miles per hour over the speed limit. He foolishly, recklessly, and unnecessarily ran a red light at a high rate of speed and caused a second accident, all in an effort to reach a destination at which there was nothing left for him to do.

¶48. Because the need for a full-force emergency response had ceased to exist, Officer Brown's unnecessary high rate of speed, which he knew could cause his vehicle to outrun the sound of siren, and his failure to slow down enough for the intersection he knew to be busy, shows an abandonment of care and a conscious indifference to foreseeable consequences. In his haste to get to an accident scene where he should have known he was not needed, Officer Brown created another car wreck.

¶49. The Court has held that an officer's use of emergency lights and sirens, combined with low speed, does not show an abandonment of care or an indifference to the consequences. *See Rayner*, 25 So. 3d at 311; *see also Presley*, 40 So. 3d at 524. But *Rayner* and *Presley* are distinguishable from the instant case.

¶50. In *Rayner*, the officer had activated his lights and siren, had stopped at the intersection, had looked both ways, and had entered the intersection cautiously before the collision. *Rayner*, 25 So. 3d at 307. A witness testified that the officer's "patrol car was stopped at the intersection, and then it proceeded *slowly* through the intersection and stopped in the middle." *Id.* at 308 (emphasis added). This Court stated:

[The officer's] precautionary measures of looking both ways and cautiously creeping into the intersection evinces that [the officer] appreciated the risk involved in crossing the intersection. He proceeded cautiously, on the alert for oncoming traffic, but he also relied upon his lights and sirens to alert oncoming traffic of his control of the intersection.

*Id.* at 311. Because "[the officer's] safety measures aptly demonstrate[d] that he exercised care in crossing the intersection[,]" the Court held that the officer's actions did not amount to reckless disregard. *Id.*

¶51. In *Presley*, an officer was involved in a wreck while responding to an emergency call about an unresponsive and bleeding man in the street. *Presley*, 40 So. 3d at 521. The officer "entered the intersection against the red light, with her blue lights and her siren and buzzer on, at approximately five miles per hour." *Id.* The Court determined that officer's actions were not reckless because the officer "exercised some measure of safety precaution by employing her blue lights and siren, activating her buzzer to alert traffic while she was crossing the lanes, *and crossing one lane at a time.*" *Id.* at 524 (emphasis added).

¶52. While the officer in *Rayner* and Officer Brown used lights and sirens during their responses to emergency calls, Officer Brown did not stop at the intersection and then proceed to creep slowly into the intersection. Likewise, and unlike the officer in *Presley*, Officer Brown was neither driving slowly nor was he crossing one lane at a time. Instead, Officer Brown hit a top speed of ninety-two miles per hour, then proceeded to approach the intersection at a speed of fifty-eight miles per hour, eighteen miles per hour over the posted speed limit, and collided with Patricia Phillip's car at forty-six miles per hour. His high rate

27

of speed and his failure to stop or slow down sufficiently to cross the intersection safely demonstrate that Officer Brown did not consider the danger posed by oncoming traffic, and it shows his conscious indifference to the consequences.

¶53. As Officer Brown raced to respond to the emergency call, his use of precautionary measures declined and his abandonment of care and indifference to the risk for others increased. The Court of Appeals majority stated correctly that "[t]he minimal safeguards that Officer Brown took when he turned on his lights and sirens and slowed down so as not to run into vehicles ahead of him do not give Officer Brown the freedom to drive recklessly." *Phillips*, 2022 WL 4353326, at *5. Officer Brown's excessive speed likely exacerbated the public's difficulty of hearing his siren, and his testimony confirms his awareness of that possibility. He did not move into the intersection cautiously as the officers in *Rayner* and *Presley* had done. Nor did Officer Brown recognize that the emergency call to which he had been responding no longer was urgent, due to the presence of multiple other responding officers on scene and a tow truck en route.

¶54. The evidence leads to the inevitable conclusion that Officer Brown cared more about rushing to the rollover wreck[4] than the safety of the public. A review of the record as a whole leads inevitably to the conclusion that Officer Brown's dangerous and immature conduct was fueled by a reckless disregard for the likelihood of a bad outcome. Considering the totality

---

[4]When asked initially if he was responding to a general call out, Officer Brown responded, "Not really. You know don't really roll up on too many overturned wrecks."

28

of the circumstances, I would find that Officer Brown's actions rose to the level of reckless disregard. Therefore, I would affirm the Court of Appeals' decision to reverse the trial court's judgment.

**KING, P.J., JOINS THIS OPINION.**